**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4509
_____

GARY CISER

v.

NESTLE WATERS NORTH AMERICA INC.

GARY CISER, on behalf of himself and all others similarly situated,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-05031)
District Judge: Honorable William J. Martini
_____

Argued December 8, 2014

BEFORE:  VANASKIE, COWEN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: January 7, 2015)


J. Burkett McInturff, Esq. (argued)
Steven L. Wittels, Esq.
Wittels Law, P.C.
18 Half Mile Road
Armonk, New York 10504
        *Counsel for Appellant*

Jeffrey M. Garrod, Esq. (argued)
Craig A. Ollenschleger, Esquire
Orloff, Lowenbach, Stifelman & Siegel
101 Eisenhower Parkway
Suite 400
Roseland, NJ 07068
        *Counsel for Appellee*

Julie Nepveu, Esq.
AARP Foundation Litigation
Consumer Action
Room B4-245
601 E Street, N.W.
Washington, DC 20049

Michael J. Quirk, Esq.
National Association of Consumer Advocates
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA 19102
        *Counsel for Petitioner Amicus Appellants*

_____

OPINION[*]
_____

VAN ANTWERPEN, *Circuit Judge*.

Gary Ciser appeals the final order of the District Court for the District of New Jersey, dated October 24, 2013, granting summary judgment in favor of defendant Nestlé Waters North America, Inc. ("Nestle"). *Ciser v. Nestlé Waters North America, Inc.*, No. 2:11–05031, 2013 WL 5774121, at *11 (D. N.J. Oct. 24, 2013). For the reasons that follow, we affirm the District Court.

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ciser, a small business owner, contracted with Nestle for the delivery of bottled water to his home office. (App. at 3a). Over the course of several years, Ciser paid occasional fees for late payments. (*Id.*) Nestle charged a flat late fee of $15 for each overdue bill. (*Id.*) Nestle's website stated that late fees would be "the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid." (*Id.*) Nestle's invoices stated that "[p]ast due invoices may be assessed a late fee as allowed by law not to exceed $20 per month. Additional third party collection/attorney expenses may be assessed at a rate not to exceed 100% of the unpaid balance or the maximum allowed by law." (*Id.* at 3a–4a). Ciser's five $15 late fee assessments relate to invoices ranging from $11.31 to $51.96—a percentage charge of 132.62% to 28.86%, respectively. (*Id.* at 4a).

Ciser filed his initial complaint on August 31, 2011 and his first amended complaint on November 18, 2011. (App. at 1sa, 56sa). Ciser filed his second amended complaint on March 5, 2013, alleging violations of the New Jersey Consumer Fraud Act ("CFA"), breach of contract, and unjust enrichment. (*Id.* at 21a). The process of the two amendments produced a simplified, but essentially unchanged, complaint—Nestle's late payment fees are grossly disproportionate (*i.e.*, bearing "no rational relationship") to the actual costs incurred by Nestle as a result of the plaintiff's late payments. (Second Am. Complaint, at ¶ 32). Therefore, Ciser argues that Nestle has engaged in an "unconscionable commercial practice" under the CFA as well as actionable conduct under New Jersey common law.

3

Ciser summarizes his complaint in "five reasons," stating that Nestle has (1) "less than 25 cents in interest carrying cost" for a 30 day consumer delinquency, (2) "virtually no incremental administrative costs from overdue payments," (3) a cost of "$1 or less" to send reminder letters, (4) a total cost vastly below the assessed $15 fee, and (5) conducted no study to determine the actual costs of untimely payments. (App. at 23a–24a). Ciser retained a business professor from New York University who concluded, using the information above, that the $15 fee was "grossly excessive." (*Id*. at 24a).[1] Ciser also compared Nestle's $15 fee to fees charged by regional competitors. (*Id*. at 33a). Competitors' fees ranged from *de minimis* charges of $1 or 1.5% to flat fees of $10 or 10%. (App. at 33a).

The District Court dismissed the entirety of Ciser's complaint with prejudice. *Ciser*, 2013 WL 5774121, at *6. First, the District Court found that Ciser had failed to plead sufficient facts to create a plausible claim for relief under the CFA. *Id*. at *3. In the alternative, the District Court found that the disclosed and contractually agreed late fees were not prohibited under the CFA as an "unconscionable commercial practice" because they did not have the capacity to "mislead" Ciser. *Id*. at *5–6. Finally, the District Court held that Ciser also failed to present sufficient facts for the common law claims of unenforceable liquidated damages and unjust enrichment. *Id*. at *6.

## II. DISCUSSION[1]

---

[1] The expert's opinion was never attached to the Second Amended Complaint, as Ciser's counsel admitted at oral argument.

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d), as amended by the

*1.    Standard of Review*

We exercise plenary review over an order granting a Rule 12(b)(6) motion. *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 764–65 (3d Cir. 2013). This Circuit is bound by the statutory interpretations of a state supreme court, *Estate of Meriano v. Comm'r*, 142 F.3d 651, 659 (3d Cir. 1998), and reviews the District Court's interpretation of state law *de novo*. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009).

*2.    New Jersey Common Law*

*A.    Specific Damages*

Ciser first argues that Nestle's late fee violates New Jersey's public policy against unreasonable specific damages clauses. We reject this argument. Specific damage clauses, when unreasonably large, constitute unfair penalties. *Wasserman's Inc. v. Township of Middletown*, 645 A.2d 100, 105–07 (N.J. 1994). Generally, the party challenging the enforcement of a specific damages clause has the burden to prove the fee unreasonable as an affirmative defense against the fee's enforcement. *Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493, 499–500 (N.J. 1999); *Wasserman's Inc.*, 645 A.2d at 108 (N.J. 2013). Permissible specific damages—deemed "liquidated damages"—must be reasonable under the totality of the circumstances. *Metlife*, 732 A.2d at 499. This test includes several non-exclusive factors, such as the

Class Action Fairness Act of 2005. We have jurisdiction under 28 U.S.C. § 1291 to review the final decision of a district court.

5

anticipated or actual harm caused by the breach, the difficulty in proving such loss, the feasibility of alternative remedies, the intention of the parties, and the bargaining power of the parties. *Id*. at 498–99.

Ciser's Second Amended Complaint alleges that Nestle's fees constitute a penalty under the totality of the circumstances test outlined in *Metlife* for (1) not having a reasonable relationship to Nestle's actual costs and (2) being excessive relative to late fees charged by competitors. (Second Am. Complaint, at ¶ 4). However, we are aware of no case—and Ciser provides no authority—that allows a plaintiff to bring an offensive claim to recover paid but allegedly unconscionable late fees, as opposed to an affirmative defense to their enforcement. *See MetLife*, 732 A.2d at 499–500 (explaining that liquidated damages provisions between commercial parties are presumptively reasonable).[2] The absence of such cases is in accord with New Jersey's adherence to the common law voluntary payment doctrine, which prevents the recovery of payments made in the absence of fraud, duress, or similar compulsion. *In re Fees of State Bd. of Dentistry*, 423 A.2d 640, 643 (N.J. 1980).

Ciser cites *Green v. Morgan Properties* for the proposition that consumers have an affirmative right of action at common law to challenge specific damages clauses. 73 A.3d 478 (N.J. 2013). In *Green*, however, the New Jersey Supreme Court held that attorneys' fees in a residential lease, which were variable depending on the nature of litigation resulting from breach, constituted an "additional rent term" and not a liquidated damages

---

[2] In *Metlife*, the defendant argued, as a defense against enforcement, that the bank's fixed percentage late fee provision was unreasonable. 732 A.2d 493.

provision. *Id*. at 491.[3]  Likewise, the New Jersey Superior Court did not treat the lease term as a specific damages clause but as a "fee-shifting provision" for which the liquidated damages framework was "inapt." *Green v. Morgan Props.*, No. L–4158–10, 2011 WL 5212388 at *6 (N.J. Super. Ct. 2011). Any extension of *Green*'s recognition of an affirmative cause of action into consumer law is unwarranted based upon the New Jersey Supreme Court's recognition of the unique nature of both landlord-tenant law and the rules of professional conduct for attorneys. *Id*. at 486, 492.

Effectively, Ciser attempts to combine the CFA's statutory cause of action against unconscionable practices with the *MetLife* affirmative defense, but the claims remain distinct. Accordingly, Ciser has not plead a cognizable common law claim. Ultimately, however, our decision rests upon the insufficiency of Ciser's pleading. Even assuming a cognizable claim at common law, Ciser has failed to state a plausible claim for relief, as discussed below in Section Four.

### B. Unjust Enrichment

Ciser brings a claim of unjust enrichment. "A cause of action for unjust enrichment requires proof that defendants received a benefit and that retention of that benefit without paying would be unjust." *Goldsmith v. Camden Cnty. Surrogate's Office*, 975 A.2d 459, 462 (N.J. Super. Ct. 2009). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Id*. at 463. The District Court dismissed Ciser's unjust enrichment claim for failure to plead

---

[3] The *Green* court specifically recognized that bringing a class action complaint to affirmatively recover unreasonable attorneys' fees was atypical. *Id*. at 489–90.

sufficient facts to state a plausible claim for relief. We agree that Ciser has failed to plead a plausible unjust enrichment claim, as discussed below in Section Four.

3.      *New Jersey Consumer Fraud Act*

As already noted, Ciser brings a claim for unconscionable business practices under the CFA. The CFA provides consumers and small businesses a private right of action to challenge unfair commercial practices. N.J.S.A. 56:8–1 *et seq.*; *Hundred East Credit Corp. v. Eric Schuster Corp.*, 515 A.2d 246, 248 (N.J. App. Div. 1986). A successful plaintiff receives treble damages, reasonable attorneys' fees, filing fees, and costs. N.J.S.A. 56:8–19. A CFA plaintiff must prove three elements for a successful claim: (1) unlawful conduct by defendant, (2) ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014). When the alleged violation consists of an affirmative act, the plaintiff need not prove that the defendant intended to commit an unlawful act. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

The only issue in this case is whether Nestle's late fee billing practices are prohibited by the CFA as unlawful conduct. The Act defines an "unlawful practice" to include:

> **any unconscionable commercial practice**, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, **in connection with the sale or advertisement of any merchandise** or real estate, or with the subsequent performance of such person as aforesaid, **whether or not any person has in fact been misled, deceived or damaged thereby.**

N.J.S.A. 56:8–2 (emphasis added); *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013). However, the Act does not define "unconscionable commercial practice." The New Jersey Supreme Court has instructed courts to "pour content" into the term on a case-by-case basis. *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971). The parties in this case offer two competing interpretations of "unconscionable commercial practice." Ciser advocates a broad reading of the term whereby plaintiffs have a cause of action to challenge any and all business conduct—regardless of whether the challenged activity is deceptive. Nestle maintains that deception is a necessary element of an unconscionable commercial practice. The District Court agreed with Nestle's interpretation, holding that the alleged unconscionable practice must evince a capacity to mislead and that a fully disclosed late fee did not evince such a capacity. *Ciser*, 2013 WL 5774121, at *5–6.

Though an unconscionable commercial practice "is an amorphous concept obviously designed to establish a broad business ethic," the term is not without limits. *Cox*, 647 A.2d at 462. The standard of conduct that the term 'unconscionable' implies is lack of "good faith, honesty in fact and observance of fair dealing." *Id*. (internal citations omitted).[4] Most importantly, the New Jersey Supreme Court has instructed that "[t]he *capacity to mislead is the prime ingredient* of all types of consumer fraud." *Id*. (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977) (emphasis added)). Accordingly, plaintiffs may not repurpose a breach of contract claim into an "unconscionable

---

[4] In *Cox*, the court held that, because the CFA clauses are disjunctive, a plaintiff need not prove that a prohibited act *also* be unconscionable. *Id*. at 462. However, the court has never decided the inverse of the issue in *Cox*—whether conduct challenged as unconscionable must also include the capacity to mislead the plaintiff.

9

commercial practice" claim under the CFA. *Id.* The *Kugler* court also instructed that

"'unconscionability' parallels that employed in developing the definition of fraud."

*Kugler*, 279 A.2d at 651 n.4.[5] The CFA's primary remedial purpose is to "root out

consumer fraud." *Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 696 A.2d 546, 551 (N.J.

1997).

Ciser unpersuasively suggests that the CFA allows a plaintiff to bring a claim

challenging late fee assessments without alleging any deception or misleading contractual

provisions. We read no binding New Jersey authority as suggesting the same. Ciser cites

only two cases—both unreported—that provide direct support for his reading of the term.

In *New York Career Guidance Services, Inc. v. Wells Fargo Financial Leasing, Inc.*, the

New Jersey superior court allowed a CFA plaintiff to survive a motion for summary

---

[5] In *Kugler*, the court emphasized the close relationship between fraud and unconscionability by quoting the following excerpt from a treatise on fraud:

> The Courts have always avoided hampering themselves by defining or laying down as a general proposition what shall be held to constitute fraud. Fraud is infinite in variety. The fertility of man's invention in devising new schemes of fraud is so great, that the Courts have always declined to define it, or to define undue influence, which is one of its many varieties, reserving to themselves the liberty to deal with it under whatever form it may present itself. Fraud, in the contemplation of a Civil Court of Justice, may be said to include properly all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another. All surprise, trick, cunning, dissembling and other unfair way that is used to cheat any one is considered as fraud.

*Id.* (quoting Kerr, Fraud and Mistake, 1 (7th ed. (1952)).

judgment by arguing that a delinquent lessee of office equipment was charged an unconscionable penalty of fifty dollars for each late payment. No. BER-L-1705-03, 2005 WL 1252315, at *1 (N.J. Super. Ct. May 2, 2005). In that case, a fee of 10% "or up to $50.00" was fully disclosed in the lease agreement. *Id*. The monthly lease payment was $53.64. *Id*. Though the court found that there was "an utter vacuum of ambiguity and no capacity for being mislead [sic]," the court permitted the CFA claim. *Id*. at *6, *12. In *King's Choice Neckwear v. Fedex Corp*., the plaintiff's CFA class action to recover a collection agency fee of $40 (covering attorney's fees, interest, and court costs) survived a motion to dismiss because the court found that the defendant's nearly 40% fee violated New Jersey public policy regarding unfair penalties. No. 7–275, 2007 WL 4554220, at *7–8 (D. N.J., Dec. 21, 2007) (citing *Wasserman's Inc.*, 645 A.2d at 108).

We agree with the District Court that *New York Career Guidance Services* and *King's Choice* are not persuasive. The two opinions attempt to import *Wasserman's* and *Metlife* into an offensive CFA claim for unconscionability. Until the New Jersey Supreme Court decides otherwise, we read precedent as suggesting that the CFA requires some element of deceptive conduct, explicit or implicit, to be actionable as an unconscionable practice. The capacity to deceive is conceptually distinct from a showing of fraud or deception in fact. The CFA does not require actual deception or an intent to deceive. *Cox*, 647 A.2d at 462. At oral argument, Ciser argued that exorbitant late fee charges are deceptive because they *inherently* purport to cover a certain level of actual damages. We reserve judgment on whether a late fee can be so large relative to actual costs so as to be intrinsically misleading. Ultimately, our holding rests upon Ciser's failure to plead

11

sufficient facts to state a plausible claim for relief under any theory—common law or the CFA.

Further, as indirect support, Ciser argues that *Katz v. Ticketmaster* allows a plaintiff to bring a CFA claim for excessive fees. No. 09-3740 (MLC), 2010 WL 2539686 (D. N.J. 2010). In *Katz*, also an unreported case, the defendant imposed mandatory "parking fees" without regard to individuals' mode of transportation, "ticket fees" without explanation of resulting services, and "charity fees" without identifying any intended beneficiary. *Id*. Taking the practices together, the court found a deceptive scheme to mislead consumers about the value of a ticket and thus arbitrarily inflate ticket prices. *Id*. at *6–7. In *Katz*, the court found that the deceptive scheme evinced Ticketmaster's distinct capacity to mislead consumers—this finding is qualitatively different than the fully disclosed late fee in Nestle's consumer contract with Ciser. Therefore, we find *Katz* distinguishable from the case at issue and consistent with a requirement to show a capacity to mislead under the CFA. Ultimately, however, our decision rests upon the insufficiency of Ciser's pleading. Even assuming a cognizable CFA claim, Ciser has failed to state a plausible claim for relief, as discussed below.

### 4. *Failure to State Plausible Claims*

Notwithstanding the viability, vel non, of a common law or CFA claim, Ciser has failed to plead sufficient facts to create a plausible claim for relief under either potential cause of action.[6] "[T]o survive a motion to dismiss, a complaint must contain sufficient

---

[6] As elaborated in *Cox*, because the intent to deceive or actual deception is not required for a CFA claim, a heightened pleading standard under FRCP Rule 9 is not

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully." *Id*. In evaluating a complaint for sufficiency, we (1)

outline the elements a plaintiff must plead to state a claim for relief, (2) disregard

allegations that are no more than conclusions, and (3) look for well-pled factual

allegations and, assuming their truth, determine whether they plausibly give rise to an

entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Notwithstanding our outline of the claims above, Ciser's Second Amended

Complaint is threadbare. We must disregard his conclusory allegations stating that

Nestle's scheme is "oppressive," "exorbitant and illegal," and "stratospheric." (Second

Am. Complaint , at ¶¶ 1–2). Similarly, we must disregard Ciser's expert—without

providing a report with additional facts, he has only proffered a conclusory opinion. What

remains of the Complaint is insufficient. Ciser asserts that the only two components of

Nestle's "actual costs" incurred from late payment are (1) lost interest on the overdue

balance, and (2) the incremental administrative costs to send letters to customers (*Id*. at

¶¶ 5, 30). From this, Ciser infers that Nestle's late fee is grossly disproportionate because

the maximum cost Nestle would have incurred as a result of a late payments is $1.14

(*Id*. at ¶ 34). However, the dearth of factual information does not result in a plausible

claim that Nestle's only incurred costs are $1.14.

---

warranted. 647 A.2d at 462; *see also Katz*, 2010 WL 2539686 at *5 (citing *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 525 (D. N.J. 2008)).

Attempts to shoehorn *Metlife* into the CFA framework also fail to nudge Ciser's claims to plausibility. Prior to *Metlife*, no reported New Jersey case directly addressed the validity of a fixed percentage late charge. *Metlife*, 732 A.2d at 501. The defendant in *Metlife* challenged a 5% liquidated damages provision negotiated at arms-length between sophisticated parties as part of a loan for commercial property worth $1.5 million. *Id*. at 495. The percentage was well within the industry standard. *Id*. at 496. Ciser attempts to argue that *Metlife*'s 5% standard necessarily prohibits Nestle's late fee, but its holding "applies only to commercial loan transactions and does not address the issue of enforceability of liquidated damage clauses in consumer contracts or in residential mortgages." *Id*. at 502, n.2. Ciser pleads that one late fee amounted to 132% of the underlying bill. (Second Am. Complaint at ¶ 2). However, relying solely on a percentage standard is impractical as applied to small value consumer contracts such as Ciser's. Under that standard, any business offering goods and services of nominal value would be prevented from assessing any meaningful late fee. Indeed, the *Metlife* court noted that attributing administrative costs to a single consumer "underestimates the difficulties and impracticalities involved in determining the actual damages incurred in dealing with delinquent borrowers." *Metlife*, 732 A.2d at 493.

Thus, Ciser's claims amount to unsupported legal conclusions based upon unwarranted inferences. Without more information, a $15 late fee on its face does not plausibly suggest an unfair penalty or an unconscionable practice—especially when competitive with an industry standard. Ciser has further failed to provide any information that would suggest a dimension of deception permitting a challenge under the CFA.

14

Consistent with the foregoing, Ciser has likewise failed to plead facts sufficient to show that Nestle's retention of a benefit from Ciser—the late fee payments—would result in an injustice.

## III.    CONCLUSION

For the foregoing reasons, we affirm the decision of the District Court.