# IN THE SUPREME COURT OF IOWA

No. 15–0334

Filed June 10, 2016

**EMILY M. BASS,** on Behalf of Herself and All Others Similarly Situated,

Appellant,

vs.

**J.C. PENNEY COMPANY, INC.,**

Appellee.

---

Appeal from the Iowa District Court for Woodbury County, Jeffrey Poulson, Judge.

Plaintiff appeals from district court summary judgments in a class action suit against a retailer based on a wrongful collection of sales tax. **AFFIRMED.**

Colby M. Lessmann, Timothy S. Bottaro, and Amanda Van Wyhe of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Ross, LLP, Sioux City, for appellant.

Michael W. Thrall, Bruce W. Baker, and Keith P. Duffy of Nyemaster Goode, P.C., Des Moines, for appellee.

Thomas J. Miller, Attorney General, and Donald D. Stanley, Jr., Special Assistant Attorney General, for amici curiae State of Iowa and Iowa Department of Revenue.

**APPEL, Justice.**

In this case, we consider whether a plaintiff may bring a claim against an internet retailer for unlawfully charging Iowa sales tax on shipping and handling charges when the retailer forwarded the tax to the Iowa Department of Revenue (IDOR) pursuant to the Iowa version of the Streamlined Sales and Use Tax Act (SSUTA). The plaintiff claims the SSUTA establishes a statutory cause of action against the retailer. In the alternative, the plaintiff asserts that the retailer forwarding the collected tax to the IDOR did not extinguish common law claims against the retailer. The district court granted the retailer's motion for summary judgment. Plaintiff appealed.

For the reasons expressed below, we affirm the district court's judgment.

## I. Background Facts and Proceedings.

The question of proper assessment and collection of state sales tax on internet sales has been challenging for state governments. To address internet retailers' concerns, a number of states banded together and created an agreement related to these issues, the SSUTA. States joining the agreement subsequently enacted the SSUTA.

Aware that the tax law had been amended, Carol Danforth, a tax specialist for J.C. Penney Company, Inc., contacted the IDOR. Danforth asked IDOR staffer Lola Stegall whether J.C. Penney's "transportation and handling" charges on Iowa internet sales transactions were subject to Iowa sales tax "under the new law." Stegall replied,

> Freight charges are exempt if separately invoiced or separately stated on the bill. If stated as a single item, and mandatory to obtain the merchandise, "shipping and handling" charges (or as you state: "transportation and handling") are considered part of the purchase price of the merchandise and are subject to sales tax.

The IDOR published a summary of the changes in law related to delivery charges in the September 2005 Iowa Tax e-Newsletter. The newsletter stated:

> Delivery charges are exempt from sales tax, so long as they are separately stated, reasonable in amount and related to the cost of transportation.

On June 2, 2011, Kathleen Bottaro mailed a letter to J.C. Penney in which she stated that she had been improperly charged sales tax on shipping, handling, and delivery charges on an order and demanded reimbursement. The matter came to Danforth's attention. She researched her records and located records related to her June 2005 communication with the IDOR and the September 2005 Iowa Tax e-Newsletter. Danforth concluded that because J.C. Penney's delivery charges were "a flat fee, based on the cost of the merchandise," it did not qualify for exemption under the newsletter which seemed to require that the tax be "related to the cost of transportation."

Nonetheless, Danforth contacted IDOR once again. She seemed to get uncertain, if not contradictory advice. One IDOR employee stated that "interstate separately stated transportation handling was not taxable," but another employee indicated that because J.C. Penney's charges were related to the cost of the item, they were taxable.

After the internal review and the external communication with IDOR, Danforth replied to Bottaro. In a letter dated July 15, she stated that J.C. Penney had been advised that transportation and handling charges are subject to tax, but that she was reevaluating the issue with the state. In any event, however, Danforth refunded the tax on Bottaro's shipping and additionally gave her a $25 gift card to thank her for bringing the matter to the company's attention.

Almost two years later on April 24, 2013, Emily Bass placed an order with J.C. Penney on its website. J.C. Penney charged her sales tax on the shipping and handling charge. On May 14, Bass wrote to J.C. Penney requesting a refund and demanding that J.C. Penney cease collecting taxes on shipping and handling for Iowa transactions. J.C. Penney refunded the tax.

On August 31, Bass placed another order on the J.C. Penney website and was again charged tax on shipping and handling. On September 6, Bass filed a class action petition against J.C. Penney. In Count I, Bass sought an injunction to restrain J.C. Penney from collecting the tax. In Count II, she asserted a claim against J.C. Penney under the SSUTA. Finally, in Count III, Bass brought a negligence claim against the company. Bass served notice of the petition on J.C. Penney on September 17. After receipt of service, the company remitted all its taxes collected in the month of August 2013 to the IDOR.

J.C. Penney filed its first motion for summary judgment on November 1. Bass amended her class action petition on January 2, 2014. In the amended petition, Bass changed her negligence claim into one of negligent misrepresentation. She also added Counts IV through VIII bringing claims of fraud and fraudulent misrepresentation, violation of the Iowa Consumer Fraud Act, unjust enrichment, and conversion.

The district court first granted partial summary judgment dismissing Counts I and II of the petition. The district court dismissed the injunction claim on the ground that the collection of the tax was not illegal or void but merely irregular, and such irregularity could be adequately compensated by Bass's administrative remedy with the IDOR. The district court also held that the SSUTA did not create a private right because it would be inconsistent with the purpose of the statute and

would intrude on the IDOR's exclusive jurisdiction over the interpretation of tax law.

On June 12, 2014, J.C. Penney filed its second motion for summary judgment. The district court granted the motion on all remaining counts. The district court held that because J.C. Penney remitted the sales tax to the state Bass's only remedy for allegedly improperly collected tax was with the IDOR. In addition, the district court found no false statement or false representation from J.C. Penney regarding its method of calculating shipping and handling and, as a result, no recovery could be had on the plaintiff's remaining claims.

Bass appealed.

## II. Standard of Review.

On review of summary judgment rulings, we review for errors of law. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). We view the entire record in the light most favorable to the nonmoving party, making every legitimate inference that the evidence in the record will support in favor of the nonmoving party. *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014).

## III. Overview of Dispute.

**A. Introduction.** There are two distinct issues in this case. The first question is whether the SSUTA creates a private right of action either expressly or by implication. The second question is whether the SSUTA extinguishes the plaintiff's remaining causes of action against the retailer when the internet retailer exercises its option to remit collected taxes to the IDOR.

**B. Relevant Statutory Provisions.**

1. *Background.* In 1999, the Streamlined Sales Tax Project began to explore ways to assist states in the collection and administration of

state sales tax. Streamlined Sales Tax Governing Board, *Why Was the Streamlined Sales Tax Created?*, http://www.streamlinedsalestax.org/index.php?page=gen_2 (last visited June 1, 2016). Three years later, the SSUTA was developed. John A. Swain & Walter Hellerstein, *The Political Economy of the Streamlined Sales and Use Tax Agreement*, 58 Nat'l Tax J. 605, 610 (2005). The Iowa SSUTA is Iowa's enactment of this multistate effort to standardize and streamline the administration of sales tax to reduce the burden of compliance and to provide equal treatment to local brick-and-mortar businesses and out-of-state, online businesses. Streamlined Sales Tax Governing Board, *What is the Streamlined Sales and Use Tax Agreement?*, http://www.streamlinedsalestax.org/index.php?page=gen_1 (last visited June 1, 2016). Once states fully enact the SSUTA, they become "member states" of the Streamlined Sales Tax Governing Board. As member states, they gain access to a host of resources to enable the state to tax online purchases effectively. Twenty-four states have fully enacted the SSUTA. Streamlined Sales Tax Governing Board, *How Many States Have Passed Legislation Conforming to the Agreement?*, http://www.streamlinedsalestax.org/index.php?page=gen_3 (last visited June 1, 2016).

2. *Relevant statutory provisions.* Iowa's SSUTA is codified in Iowa Code chapter 423 (2013). In our analysis, we begin with Iowa Code section 423.8, which outlines the intent behind the legislation:

> The general assembly finds that Iowa should enter into an agreement with one or more states *to simplify and modernize* sales and use tax administration in order to substantially *reduce the burden of tax compliance for all sellers and for all types of commerce.* It is the intent of the general assembly that entering into this agreement will lead to *simplification and modernization* of the sales and use tax law and not to the imposition of new taxes or an increase or decrease in the existing number of exemptions . . . .

Iowa Code § 423.8 (emphasis added). Notably, the statement of legislative intent speaks to simplifying and modernizing the collection of taxes and reducing the burden of tax compliance for all sellers and for all types of commerce.

Iowa Code section 423.45 relates to refunds of excess taxes collected by a retailer. Subsections (2) and (3) are at the center of this controversy. Subsection (2) generally provides for refund to a consumer of excess taxes collected by a retailer upon notice by the consumer that an excess payment exists. Subsection (2) states,

> If an amount of tax represented by a retailer to a consumer or user as constituting tax due is computed upon a sales price that is not taxable or the amount represented is in excess of the actual taxable amount and the amount represented is actually paid by the consumer or user to the retailer, the excess amount of tax paid shall be returned to the consumer or user upon proper notification to the retailer by the consumer or user that an excess payment exists. . . . No cause of action shall accrue against a retailer for excess tax paid until sixty days after proper notice has been given the retailer by the consumer or user.

*Id.* § 423.45(2).

Subsection (3) provides the retailer an option in the event a customer notifies the retailer of an excess tax payment. Subsection (3) provides that a retailer who receives a notice from a consumer of payment of an excess tax may remit the amount to the IDOR. Specifically, subsection (3) states,

> In the circumstances described in subsection . . . 2, a retailer has the option to either return any excess amount of tax paid to a consumer or user, or to remit the amount which a consumer or user has paid to the retailer to the department.

*Id.* § 423.45(3).

While Iowa Code section 423.45(3) allows the retailer to remit collected taxes to the IDOR after a notice of excess tax by a consumer or

user, Iowa Code section 423.47 relates to potential taxpayer refunds. Specifically, Iowa Code section 423.47 provides,

> If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provisions of this chapter, such amount shall be credited against any tax due, or to become due, on the books of the department from the person who made the erroneous payment, or such amount shall be refunded to such person by the department.

*Id.* § 423.47.

**IV. Statutory Cause of Action.**

**A. The Parties' Positions.** Bass argues that Iowa Code chapter 423 creates a private statutory right of action that may be enforced by the plaintiff. Bass points to language in Iowa Code section 423.45(2), which provides, "No cause of action shall accrue against a retailer for excess tax paid" until "proper notice has been given the retailer by the consumer or user." According to Bass, the fact that the legislature expressly referenced "cause of action" in the statute is an explicit provision creating a private statutory cause of action under the statute. Bass asks: Why would the legislature provide a notice requirement before a cause of action accrues if there was no cause of action?

In the alternative, Bass argues that even if the reference to "cause of action" does not expressly create a cause of action, a private cause of action should be implied from the statute under the familiar four-part test presented in *Cort v. Ash,* 422 U.S. 66, 78, 95 S. Ct. 2080, 2088, 45 L. Ed. 2d 26, 36–37 (1975), as modified in *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35, 40 (Iowa 1982), and *Shumate v. Drake University,* 846 N.W.2d 503, 508 (Iowa 2014). Bass argues that a private cause of action is consistent with the purposes of the legislation. While Bass recognizes there might be a remedy for refund of taxes remitted to

the IDOR by a retailer, nothing in the statute suggests the administrative remedy should be exclusive.

J.C. Penney counters that the statute does not expressly or impliedly create a private cause of action against a retailer who remits taxes collected to the IDOR. J.C. Penney argues that the "cause of action" language in Iowa Code section 423.45(2) is simply uniform language in the Iowa SSUTA which was not designed to create a new statutory cause of action, but to ensure that *if* state law otherwise recognizes a cause of action, such claims do not accrue until sixty days after the consumer or user notifies the retailer of the payment of the excess tax.

Further, J.C. Penney argues that Iowa Code section 423.45(3) provides a safe harbor to the retailer. Under J.C. Penney's interpretation, subsection (3) allows the retailer to remit taxes to the IDOR and thereby require the consumer or user to seek any potential refund directly from the IDOR rather than the retailer. J.C. Penney argues that its interpretation is consistent with the purpose of the Iowa SSUTA, which is intended to "simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance for all sellers and for all types of commerce." Iowa Code § 423.8.

In support of its position, J.C. Penney points to appellate decisions in two states under those states' respective versions of SSUTA. In *Kawa v. Wakefern Food Corp. Shoprite Supermarkets*, the New Jersey court held that its SSUTA statute—which is nearly identical to Iowa's statute—did not create a private statutory cause of action when the retailer remitted the taxes collected to tax authorities. 24 N.J. Tax 444, 452 (Super. Ct. App. Div. 2009). Similarly, in *Georgia Power Co. v. Cazier*, the Georgia

court found that its SSUTA with its "seller-protection provisions" did not create a private cause of action. 740 S.E.2d 458, 462–63 (Ga. Ct. App. 2013).

**B. Analysis**. We begin by looking at the underlying purpose of the statute. Here, we are not required to speculate because Iowa Code section 423.8 is explicit. The purpose of the Iowa SSUTA is to simplify and modernize sales tax to ease the burdens on retailers seeking to comply with sales tax requirements. Iowa Code § 423.8. Nowhere in Iowa Code section 423.8 is there any suggestion that the legislation was designed to provide taxpayers with a new statutory remedy.

We must view the "no cause of action" language of Iowa Code section 423.45(2) through the prism of the statute's stated legislative purpose. In light of the purpose of simplifying, modernizing, and easing the burdens and administration of collection of sales tax, we do not believe the "no cause of action" language was designed to create a private cause of action under the statute. Further, we note that the "no cause of action" language is part of a uniform statute that participating member states are required to enact. The uniform provision is best understood as being designed to ensure that in all participating member states retailers are entitled to a sixty-day notice period before a cause of action, if any *otherwise* exists under local law, may be brought against the retailer. *See Georgia Power Co.*, 740 S.E.2d at 462; *Kawa*, 24 N.J. Tax at 452.

Finally, our interpretation that the "no cause of action" language does not create a statutory cause of action is reinforced by the negative phrasing. The legislature did not affirmatively state a new cause of action exists, but instead crafted what amounts to a negative or limiting provision. We thus do not find that the "no cause of action" language,

which is plainly designed to limit potential claims under a uniform act, can be used topsy-turvy to expand claims.

For some of the same reasons, we also find that no cause of action is implied by the "no cause of action" language. In determining whether a statute creates an implied cause of action, we apply the four-part test of *Seeman*, 322 N.W.2d at 40. Under the *Seeman* test, we consider (1) whether "the plaintiff [is] a member of the class for whose special benefit the statute was enacted," (2) "[l]egislative intent, either explicit or implicit, to either create or deny such a remedy," (3) whether a "private cause of action [is] consistent with the underlying purpose" of the statute, and (4) whether the "implication of a private cause of action [will] intrude into an area over which the . . . government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency." *Id.* at 41–43; *see also Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 254 (Iowa 2012).

Applying the *Seeman* test, we think it clear that we should not imply a private cause of action under the SSUTA. The SSUTA was not enacted to benefit taxpayers, but instead to streamline the tax collection process for retailers. The legislative intent behind the statute is not furthered by requiring retailers to answer to consumers or users for collection of sales taxes which are not collected to the benefit of the retailer but are collected on behalf of the state and remitted to taxing authorities. Further, we think the structure of the statute is clear—a retailer faced with a claim of excess collection of sales tax by a consumer or user faces a choice; it can refund the amount to the consumer or user or it can remit the funds to the IDOR and allow the taxpayer to pursue administrative remedies with the IDOR. Implying a private right of action

would complicate, rather than simplify, the tax collection process under the SSUTA.

For the above reasons, we conclude the district court correctly granted J.C. Penney's motion for summary judgment on the plaintiff's statutory claims grounded in SSUTA.

## V. Overview of Non-SSUTA Causes of Action.

**A. Bass's Position.** Bass asserts that even if the SSUTA does not create a statutory cause of action, Bass still has other common law and statutory claims against the retailer for collection of excess taxes. She brings a statutory claim under the Iowa Consumer Frauds Act, Iowa Code chapter 714H, and common law claims of negligent misrepresentation, fraud and fraudulent misrepresentation, unjust enrichment, and conversion.

Bass groups her non-SSUTA claims into two categories. The first group of non-SSUTA claims is based upon J.C. Penney's representations that charging sales tax on shipping and handling is required by Iowa law (tax representation claims). The second group of non-SSUTA claims is based upon representations regarding shipping and handling on the company's website (shipping and handling misrepresentation claims).

With respect to the tax misrepresentation claims, Bass asserts that J.C. Penney wrongfully represented that Iowa sales tax is required on its shipping and handling charges. Bass asserts that shipping and handling charges of J.C. Penney are not subject to tax and the company is answerable for its wrongful conduct in making the false misrepresentation that shipping and handling charges were subject to sales tax. To the extent the IDOR suggested to J.C. Penney that the charges were subject to sales tax, Bass simply contends such advice was

wrong under the applicable statute. Iowa Code § 423.1(51)(*a*)(4) (exempting "delivery charges" from the value subject to tax).

Bass disagrees that the administrative remedies with the IDOR are exclusive when a retailer remits collected taxes to the IDOR. In support of her argument, Bass cites *George v. D.W. Zinser Co.*, 762 N.W.2d 865 (Iowa 2009). In *George*, we noted that if the legislature intended a statute providing for administrative relief to provide an exclusive remedy and preclude a private cause of action, it could expressly do so. *Id.* at 872.

The second category of non-SSUTA claims relates to representations made on J.C. Penney's website with respect to shipping and handling charges. Bass's claims focus on a website statement by J.C. Penney that "[s]hipping and handling charges for delivery will be added to your purchase, based upon the total of your order and the type of delivery you select or is available." Bass claims this statement is false or misleading because the charges are not, in fact, "shipping and handling" charges.

**B. J.C. Penney's Position.** With respect to Bass's sales tax representation claims, J.C. Penney responds that when a retailer remits collected sales taxes to the IDOR pursuant to Iowa Code section 423.45(3), the exclusive remedy rests with administrative proceedings before the IDOR seeking a refund. In support of its position, J.C. Penney cites *Loeffler v. Target Corp.*, 324 P.3d 50 (Cal. 2014). In *Loeffler*, the California Supreme Court considered whether an administrative remedy to determine sales tax issues was exclusive in the context of a statute unrelated to SSUTA. *Id.* at 54. The *Loeffler* court concluded that the administrative remedy was exclusive and that claims under a consumer

protection statute were barred.  *Id.*  A similar result was reached in *Kawa* under the New Jersey version of the SSUTA.  *Kawa,* 24 N.J. Tax at 451.

With respect to the shipping and handling claims, J.C. Penney offers the additional argument that no misrepresentation was made on the website.  J.C. Penney points out that its website accurately described the charge for shipping and handling, including a matrix presentation that showed how the charge was affected by the amount of purchase and the method of delivery chosen by the customer.   J.C. Penney thus concludes that no reasonable person would be misled by its shipping and handling charges.

**VI.  Analysis of Non-SSUTA Claims.**

**A.  Tax Representation Claims.**  We first consider the merits of the district court's granting of summary judgment on the sales tax representation claims on the ground that the remedies under Iowa Code sections 423.45(3) and 423.47 are exclusive remedies barring any other claims for relief for wrongful payment of sales taxes under SSUTA.

We have considered whether a statute provides an exclusive remedy in a number of cases.  For example, in *Northrup v. Farmland Industries, Inc.,* we held that the Iowa Civil Rights Act provided the exclusive remedy for a claimant seeking to pursue a remedy for a discriminatory practice.  372 N.W.2d 193, 197 (Iowa 1985).  We noted that the statute expressly declared that "[a] person claiming to be aggrieved by an unfair or discriminatory practice must initially seek an administrative relief by filing a complaint with the [Iowa Civil Rights C]ommission . . . ."  *Id.* at 196 (quoting Iowa Code § 601A.16(1) (1983)).  We found that the statute clearly provided that the procedure under the Iowa Civil Rights Act was exclusive.  *Id.* at 197.  In light of the express language of the statute, *Northrup* was an easy call.

In many situations, however, the legislature has not provided us with express direction regarding whether a statutory remedy is exclusive. We have said, however, that the absence of express exclusivity language does not give rise to a presumption of nonexclusivity. *Goebel v. City of Cedar Rapids*, 267 N.W.2d 388, 392 (Iowa 1978); *see also Snyder v. Davenport*, 323 N.W.2d 225, 227 (Iowa 1982). For instance, in *Van Baale v. City of Des Moines*, we held that when the legislature has provided a comprehensive scheme for dealing with a particular kind of dispute, the statutory remedy provided is generally exclusive. 550 N.W.2d 153, 156 (Iowa 1996). We stated in *Van Baale* that the label of the claim was not controlling. *Id.* (noting that actions in contract and tort can be barred by a statute providing the exclusive remedy for wrongful discharge is administrative).

Under *Van Baale*, it is plausible to assert that to the extent a taxpayer has a dispute with the IDOR or the director with respect to taxes paid to the department, Iowa Code section 423.47 (2013) provides an exclusive remedy to resolve the issues. No one can seriously contest that the regulatory framework is a dense, comprehensive scheme. *See* Iowa Code §§ 422.67–.75; Iowa Admin. Code ch. 701 (2013); *cf. Walthart v. Bd. of Dirs.*, 667 N.W.2d 873, 878 (Iowa 2003); *Van Baale*, 550 N.W.2d at 156 ("Where the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive." (quoting 1A C.J.S. *Actions* § 14 n.55 (1985))); *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (holding a "pervasive regulatory scheme" shows that the legislature intended the administrative remedy to be exclusive).

Ordinarily, however, a remedy cannot be considered exclusive if the party does not have access to the remedy. In all of the exclusivity

cases, the plaintiff had the opportunity to seek relief from the exclusive remedy. *Van Baale*, 550 N.W.2d at 155 (describing how the plaintiff had an opportunity to pursue an exclusive remedy "before the civil service commission"); *Northrup*, 372 N.W.2d at 195; *Snyder*, 323 N.W.2d at 227. Further, an administrative remedy should be adequate in order to be deemed exclusive. *City of Des Moines v. Des Moines Police Bargaining Unit Ass'n*, 360 N.W.2d 729, 731 (Iowa 1985) (stating that the administrative process will be held to be exclusive only when an adequate administrative remedy exists, and the statutes expressly or impliedly require that the remedy be exhausted before a court may hear the issue); *see B & D Inv. Co. v. Schneider*, 646 S.W.2d 759, 763 (Mo. 1983) (en banc).

Here, however, it is not clear that the consumer may seek the remedy which Bass claims is exclusive. Specifically, Iowa Code section 423.47 provides,

> If it shall appear that, as a result of mistake, an amount of tax, penalty, or interest has been paid which was not due under the provisions of this chapter, such amount shall be credited against any tax due, or to become due, on the books of the department from the person who made the erroneous payment, or such amount shall be refunded to such person by the department.

Iowa Code § 423.47. By the statute's express terms, the remedy is available in the event of "mistake" by "the person who made the erroneous payment." *Id.*

Who is "the person who made the erroneous payment?" Under Iowa Code section 423.29, every seller who is a retailer and makes sales of tangible personal property is required to "collect the sales tax." *Id.* § 423.29. Unlike other states, a seller is not allowed to advertise or hold out that the retailer is absorbing taxes or that taxes will not be added to

the sales price of property sold. Iowa Code § 423.24. The burden of the Iowa sales tax thus plainly falls on the consumer, from whom the retailer is required to collect the tax, and not upon the retailer.

The parties originally cited no Iowa authority on the question of whether a consumer may obtain a remedy under Iowa Code section 423.47. In at least two cases from other jurisdictions, however, for purposes of recovery of sales taxes paid to the state, the taxpayer has been held to be the retailer and not the consumer. *Loeffler*, 324 P.3d at 64; *State v. Buggy Bath Unlimited, Inc.*, 18 P.3d 1182, 1187 (Wyo. 2001). As explained above, under Iowa law, a claim of exclusiveness of a statutory remedy would be undermined if the complaining party could not utilize the exclusive remedy.

To clarify the issue, we sought supplemental briefing from the parties and an amicus brief from the State of Iowa. As a result of our request, the IDOR weighed in on the question of who may seek a refund under Iowa Code section 423.47. The IDOR emphasizes that under the Iowa statutory framework, the retailer is required to collect the tax. *See, e.g.*, Iowa Code § 423.1(47) (defining "retailer" as including "seller[s] obligated to *collect* sales or use tax" (emphasis added)); *id.* § 423.2(12) ("All taxes *collected* under this chapter by a retailer . . . are deemed to be held in trust for the state of Iowa." (Emphasis added.)); *id.* § 423.14(1)(*a*) ("Sales tax . . . shall be *collected* by sellers who are retailers or by their agents." (Emphasis added.)). Under the language of the Iowa statutes, the IDOR asserts that the retailer merely *collects* the tax, which is *paid* by the consumer.

As a result, IDOR maintains that the consumer as the taxpayer has the right to seek a refund of taxes paid under Iowa Code section 423.47. The IDOR distinguishes *Loeffler* and *Buggy Bath* on the ground

that the language of the state statutes involved in these cases actually imposed the sales tax on the retailer, not the consumer.

Neither party challenges the interpretation of the IDOR on this point and, after review of the various statutes and cases cited, we conclude that the IDOR's interpretation is correct. Unlike the statutory schemes in California and Wyoming, the Iowa statutory scheme treats the retailer as one who collects the tax and holds the collections in trust for the state. The retailer under the Iowa statutory scheme is a mere conduit for the IDOR. As a result, J.C. Penney's argument with respect to the exclusivity of Iowa Code section 423.47 cannot be defeated on the ground that the remedy is not available to the plaintiffs in this case.

Having concluded that taxpayers have a remedy against IDOR and that, as a result, the provision of Iowa Code section 423.47 may be exclusive, we thus confront *Loeffler*, in which plaintiffs challenged the Target Corporation's collection of sales tax on coffee to go. *Loeffler*, 324 P.3d at 53–54. The trial court dismissed the plaintiffs' claims. *Id.* at 57. On appeal, the plaintiffs argued that they were entitled to bring an action for misrepresentation by Target that sales tax was due on coffee to go under the California unfair competition statute and the Consumers Legal Remedies Act. *Id.* at 58. As J.C. Penney does here, Target urged that the exclusive avenue for challenging the imposition of sales tax on consumer transaction was the administrative apparatus of the California taxing authority.[1] *Id.* at 60.

---

[1]Unlike in this case, under California law retailers, rather than consumers, were the taxpayers. Thus, in some respects, the argument for exclusivity of administrative remedies that were available only to taxpayers had less attractiveness in *Loeffler* than in this case, where the consumers are taxpayers and have an available administrative remedy.

The California Supreme Court found that California's well-developed administrative remedy before the board was an exclusive remedy for tax matters even in the absence of an express legislative direction. *Id.* at 82. The court concluded that the plaintiffs' claims—based upon Target's alleged misrepresentation regarding the taxability of the sale of hot coffee—required resolution of what the court called "the taxability question." *Id.* at 77. The court reasoned that the taxability question under applicable statutes must be resolved by the taxing authority and that the tax code precluded claims outside the established process. *Id.* at 79. As a result, the plaintiff consumers in *Loeffler* could not bring an action against Target under California consumer protection laws for misrepresenting the sales taxes due on the sale of hot coffee at Target retail locations. *Id.* at 82; *see also Stoloff v. Neiman Marcus Grp., Inc.*, 24 A.3d 366, 373 (Pa. Super. Ct. 2011) (holding that a claim under Pennsylvania's consumer protection law, among other claims, could not be brought against the retailer for alleged overpayment of tax because the administrative remedy was exclusive).

A dissenting opinion in *Loeffler* adopted a different view. According to the dissent, the plaintiffs' actions involved a dispute between the consumers and the retailer based on statutory grounds, not a dispute between the retailer and the state. *Loeffler*, 324 P.3d at 82 (Liu, J., dissenting). The dissent noted that the consumer fraud statute was to be liberally construed for the benefit of consumers. *Id.* at 85. While the dissent recognized that it might be desirable to have the department of revenue participate in decisions involving a determination of the legality of sales taxes for policy reasons, such participation could be achieved by joining the department as a party to the litigation. *Id.* at 86.

Based on the above considerations, we conclude that Iowa Code section 423.47 provides an exclusive remedy for disputes between consumers and retailers over retailers' representations to consumers about the tax consequences of transactions. In this tax case, the retailer simply collects the taxes and holds them in trust for the state. Iowa Code § 423.2(12); *see, e.g.*, *Cash v. State*, 628 So. 2d 1100, 1101 (Fla. 1993) (holding that a retail seller was an agent of the state in the collection of taxes and thus owed a fiduciary duty toward the state); *Stoloff*, 24 A.3d at 372–73 (explaining that once a retailer collects the tax, it holds it in trust for the state); *Davis v. State*, 904 S.W.2d 946, 951 (Tex. App. 1995) ("[T]he sales tax collector holds tax receipts, the state's property, in trust for the state."). The state has the beneficial interest in the funds collected by the retailer and temporarily held by the retailer prior to remission to the IDOR. Under Iowa Code section 423.45(3), SSUTA allows the retailer, when faced with a consumer complaint regarding the imposition of sales tax, to either refund the tax or to pass the funds on to the beneficiary, the state. Once the funds are passed on to the state, the consumer has a remedy pursuant to Iowa Code section 423.47.

Admittedly, the statute does not expressly declare that the remedy provided in Iowa Code section 423.47 is the customer's exclusive remedy when the funds have been remitted by the retailer. But, as in *Loeffler*, the Iowa law surrounding sales tax is often quite complicated, involving myriad potential fact patterns. *See Loeffler*, 324 P.3d at 62. Many sales tax questions are not easily handled by general practitioners but fall in the province of specialists. *See generally* Charles Rembar, *The Practice of Taxes*, 54 Colum. L. Rev. 338, 340 (1954) (describing how tax law is unlike other areas of law and shares much in common with

accountancy). In this unusual setting, orderly administration of tax law will be thwarted if consumers are able to bring claims against retailers claiming that the retailer illegally assessed taxes. Further, one of the purposes of SSUTA was to "simplify and modernize sales and use tax administration in order to substantially reduce the burden of tax compliance for all sellers." Iowa Code § 423.8. Allowing retailers to be sued over taxability questions when the retailer has forwarded the funds to the IDOR is in conflict with the fundamental statutory purpose.

Thus, our decision here is not based simply on the denseness and comprehensiveness of the regulatory scheme, but primarily on the inconsistency of the remedy sought by the plaintiffs with the structure of provisions of the tax code designed to provide a retailer with a way to step out of tax controversies and pass the problems, if any, onto the IDOR. This case thus differs markedly from *Freeman v. Grain Processing Corp.*, in which the federal statutory and regulatory environment was also detailed but the plaintiff's additional statutory and common law remedies were cumulative and not inconsistent with the federal law.[2] 848 N.W.2d 58, 88–89 (Iowa 2014).

In sum, our decision today is a narrow one. Given the structure of SSUTA and the unique regime for tax collection generally, we conclude the best reading of Iowa Code section 423.47 is that it provides the exclusive remedy for a party seeking a refund of sales tax claims where the retailer has forwarded the funds to the IDOR pursuant to Iowa Code section 423.45(3). Therefore, the district court properly dismissed the claims of the plaintiff's related to the alleged unlawful payment of taxes.

---

[2]Nothing in this opinion addresses the scenario in which a retailer collects a tax, receives a consumer complaint, but refuses to refund the collected tax and does not forward the taxes collected on to the IDOR.

**B. Shipping and Handling Misrepresentations.** We now turn to the shipping and handling misrepresentation claims. The gist of all of these claims is the assertion that J.C. Penney has made a material misrepresentation related to its shipping and handling charges and that plaintiffs are entitled to recover under various theories including negligent misrepresentation, fraud, fraudulent misrepresentation, unjust enrichment, violation of the Iowa Consumer Fraud Act, and conversion.

Upon our review of the undisputed facts, we conclude that J.C. Penney did not make a material misrepresentation concerning shipping and handling charges that provides a claim for relief under any of Bass's theories. The J.C. Penney website stated that it charged for delivery based upon the total cost of the items ordered and the type of delivery the customer selected. The specific charges were identified based on the two variables. As is apparent from J.C. Penney's disclosures, the cost of the delivery charge as a percentage of the amount of the order declined as the amount of the order increased, thereby serving as an incentive for consumers to purchase additional items to save on delivery charges. Nowhere in the website did J.C. Penney claim that its shipping and handling charges were based upon "actual cost." Indeed, the matrix chart provided by J.C. Penney plainly demonstrated that the key variables were not weight or size but cost of the item and the chosen method of delivery. *See Zuckerman v. BMG Direct Mktg., Inc.,* 737 N.Y.S.2d 14, 15 (App. Div. 2002) (holding that billing consumers for shipping and handling an amount exceeding the seller's actual costs cannot be deceptive as a matter of law when the amounts are fully disclosed); *see also Ciser v. Nestle Waters N. Am. Inc.,* 596 F. App'x 157, 163 (3d Cir. 2015) (finding a fully disclosed late fee charge had no capacity to mislead); *Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d

609, 623–24 (7th Cir. 2012) (concluding that charging a flat "handling, postage, and insurance" fee in excess of actual costs on investment transactions, when the amount was fully disclosed to customers, was not a misrepresentation); *Bergmoser v. Smart Document Sols., LLC*, 268 F. App'x 392, 395 (6th Cir. 2008) (finding no statement of a claim of fraud when the retailer charged a flat postage fee more than its actual cost because the retailer did not represent that the postage rate was its actual cost).

Under these circumstances, we do not see that Bass has a viable cause of action under any of the alleged theories. The undisputed facts reveal that no materially false or deceptive misrepresentation to support negligent misrepresentation or fraud and fraudulent misrepresentation claims occurred. Any person examining the disclosures of J.C. Penney knew exactly what was being charged and how that charge was calculated. J.C. Penney's disclosures were not complicated or confusing, and did not involve tricky or clever stratagems or fine print designed to mislead less attentive customers. J.C. Penney's clear disclosures do not, as a matter of law, give rise to "substantial, unavoidable injury to consumers." Iowa Code §§ 714.2(9), .16(1)(*n*). Because there is a contract between the consumer and J.C. Penney for the sale of goods, the claim for unjust enrichment fails as a matter of law. *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990). Conversion will not lie because in light of the clear disclosure, there is no wrongful control of another person's property contrary to that person's possessory interests. *See Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999).

As a result, we agree with the district court that J.C. Penney was entitled to summary judgment on the shipping and handling misrepresentation claims.

**VII. Conclusion.**

For the above reasons, the judgment of the district court granting summary judgment on the claims in this case is affirmed.

**AFFIRMED.**