**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2440. GEORGIA POWER COMPANY v. CAZIER et al.

MCFADDEN, Judge.

Amy Cazier and other individuals filed a putative class action lawsuit against Georgia Power Company, alleging that it had improperly collected certain sales taxes and fees. Georgia Power filed a motion to dismiss for failure to state a claim. The trial court, which has not yet certified the putative class, denied the motion, but issued a certificate of immediate review. This court granted Georgia Power's application for interlocutory review, and Georgia Power filed a timely notice of appeal. Because the trial court erred in ruling that the appellees may bring a direct cause of action for a refund of allegedly overpaid sales taxes against a dealer such as Georgia Power, as set forth in the first two counts of the complaint, we reverse that portion of the trial

court's ruling. But as to the third count of the complaint which alleges improper calculation of municipal franchise fees, we affirm.

> It is well established that a motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citations and punctuation omitted.) *Scouten v. Amerisave Mortg. Corp.*, 283 Ga. 72, 73 (1) (656 SE2d 820) (2008). See also OCGA § 9-11-12 (b) (6).

So construed, the pleadings show that the appellees are customers who purchase electrical service from Georgia Power. Georgia Power, as a dealer of such service, is authorized to collect and remit sales and use taxes to the Georgia Department of Revenue. See *Sawnee Elec. &c. v. Georgia Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005) (sale of electricity to a purchaser for purposes other than for resale is a retail sale on which the purchaser must pay a sales tax to the retailer, which must remit the tax to the Georgia Commissioner of Revenue). The appellees' monthly bills from Georgia Power include a nuclear construction cost

recovery fee, which finances the cost of building a new nuclear generating facility, and a municipal franchise fee, which covers payments made to municipalities for access to roads and rights of way. The bills also show that Georgia Power has assessed sales taxes on both of these fees. While the appellees do not challenge Georgia Power's authority to charge the nuclear construction and municipal franchise fees, they allege in counts one and two of the complaint that such fees are not subject to sales taxes and that Georgia Power has therefore improperly collected sales taxes on both of these fees. In count three, the appellees also claim that Georgia Power has improperly calculated the municipal franchise fee. The appellees seek refunds from Georgia Power for the allegedly improper collection of sales taxes and improper calculation of municipal franchise fees.

Georgia Power moved to dismiss the complaint on various grounds, including the ground that it cannot be sued directly in a sales tax refund action. The trial court denied the motion, finding, in pertinent part, that the appellees were authorized to seek such a refund from a dealer under OCGA § 48-2-35.1 (d).

1. *OCGA § 48-2-35.1 (d) sets out a procedure for claiming refunds from the Georgia Department of Revenue; it does not create a cause of action against dealers.*

3

Georgia Power claims that the trial court erred in ruling that OCGA § 48-2-35.1 (d) creates a cause of action allowing purchasers to sue sellers for a refund of allegedly overpaid sales tax. We agree.

OCGA § 48-2-35 sets forth procedures for a taxpayer to claim a refund of erroneously collected taxes from the Georgia Department of Revenue. If a taxpayer's claim for a refund is denied by the department's commissioner, the taxpayer then has the right to bring an action for a refund in the state tax tribunal or in superior court. OCGA § 48-2-35 (c) (4). A taxpayer, in filing either the claim for a refund from the department or the subsequent court action, may not do so "on behalf of a class consisting of other taxpayers who are alleged to be similarly situated." OCGA §§ 48-2-35 (c) (1) (D) & (5).

OCGA § 48-2-35.1 pertains to sales taxes, and subsection (d) establishes specific procedures for a person to seek a refund of erroneously paid sales taxes. It provides that

> [a] person that has erroneously or illegally paid sales taxes to a dealer that collected and remitted such taxes to the commissioner *may elect to seek a refund* from such dealer. Alternatively, such person may file a claim for refund either initially with the commissioner or with the commissioner after being unable to obtain a refund from such dealer and shall also be considered a taxpayer for purposes of filing a claim for refund under Code Section 48-2-35[.]

4

(Emphasis supplied.) OCGA § 48-2-35.1 (d).

The code section then goes on to detail the methods for filing such a refund claim with the department, either initially or after having been unable to obtain a refund from the dealer. If the person files a refund claim initially with the commissioner, the person must provide the department with a notarized form executed by the dealer which affirms, among other things, that the dealer remitted the taxes to the state and will not claim a refund of the same tax included in the person's refund request. OCGA § 48-2-35.1 (d) (1). But if the person files a refund claim with the commissioner after having been unable to obtain a refund directly from the dealer, the person must provide a letter or other information to the commissioner showing either that the dealer refused or was unable to refund the erroneously collected sales taxes, or that the dealer did not act upon the person's written refund request within 90 days. OCGA § 48-2-35.1 (d) (2).

> [T]he fundamental principle of statutory construction . . . requires us to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else. . . .When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant, so when a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly.

5

(Citations and punctuation omitted.) *Citibank (South Dakota), N.A. v. Graham*, 315 Ga. App. 120, 121-122 (1) (726 SE2d 617) (2012). "Furthermore, a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes *in pari materia*, are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." (Citation omitted.) *Aimwell, Inc. v. McLendon Enterprises*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012).

The plain language of OCGA § 48-2-35.1 (d) provides that a person may "seek a refund" of erroneously paid sales tax from a dealer who collected the tax and remitted it to the commissioner. But, this language obviously makes no mention of a cause of action. "[I]f the General Assembly intended to [create a cause of action] it could have simply said so." *McCobb v. Clayton County*, 309 Ga. App. 217, 221 (1) (c) (710 SE2d 207) (2011).

Further, when OCGA § 48-2-35.1 (d) is read in conjunction with the rest of the statute and with OCGA § 48-2-35, which together provide specific remedies for claiming a refund of erroneously paid sales taxes, it becomes clear that the legislature did not intend to create a new cause of action. "It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies,

6

a court must be chary of reading others into it." (Citations omitted.) *Cellular One v. Emanuel County*, 227 Ga. App. 197, 200 (489 SE2d 50) (1997) (holding that legislature did not intend for counties to have independent cause of action against dealers for improper remittance of local sales taxes to commissioner).

The remedy created by the unambiguous language of OCGA § 48-2-35.1 (d) allows a person who has erroneously paid sales taxes to choose between the alternatives of initially seeking a refund from the dealer or filing a claim with the commissioner. If the person first opts to seek a refund from the dealer and is unsuccessful, the code section provides a specific administrative remedy allowing the person to then file a claim for a refund with the commissioner. OCGA § 48-2-35.1 (d). Moreover, the code section specifies that a person filing such a refund claim must provide to the commissioner certain information regarding the failed effort to obtain a refund from the dealer, and that a person filing such a claim is considered a taxpayer for purposes of filing such a claim as provided by OCGA § 48-2-35. OCGA § 48-2-35.1 (d) (2) (A).

In harmonizing this code section with OCGA § 48-2-35, it is apparent that the legislative intent was to provide a person who has erroneously paid sales tax the opportunity to bypass the filing of a formal refund claim with the department by first

7

simply requesting a refund from the dealer, while still preserving the person's right to later pursue an administrative remedy with the department in the event the request for a dealer refund fails. And as the statutory scheme expressly provides, if that administrative claim for a refund from the commissioner fails, then the taxpayer may bring an action against the department in superior court. OCGA § 48-2-35 (c) (4). But nowhere in this statutory scheme is there any similar express provision for a taxpayer to bring an action against a dealer in superior court. See OCGA §§ 48-2-35, 48-2-35.1. Accordingly, contrary to the trial court's ruling and the arguments of appellees, OCGA § 48-2-35.1 (d) does not authorize a cause of action for a refund of allegedly over-collected sales taxes against a dealer.

Moreover, we note that our holding is consistent with those of courts in other states that have construed similar statutory language. For example, the Texas Court of Appeals ruled that a purchaser could not sue a retailer for a sales tax refund even though an administrative code section provided that "[a] person who remits tax to a permitted seller may request from the seller or the comptroller a refund of [the] tax paid in error." *Burgess v. Gallery Model Homes*, 101 SW3d 550, 556 (Tex. App. 2003). While acknowledging that under this code section a purchaser may seek a tax refund from the seller, the court noted that the code section lacks "a procedure for

8

*compelling* the seller to refund the collected tax." (Emphasis in original.) Id. at 556, 557. Likewise, in our case, although OCGA § 48-2-35.1 (d) provides clear procedures for compelling the department of revenue to refund erroneously collected sales tax, it lacks any such procedure for compelling a seller to do so.

Similarly, the Illinois Supreme Court considered a statute providing that if a seller over-collects certain use tax then "the purchaser shall have a legal right to claim a refund of such amount from the seller." *Adams v. Jewel Companies*, 348 NE2d 161, 165 (Ill. 1976). The court expressly rejected the plaintiffs argument, which echoes the same argument made in the instant case, that the plain language of the statute permits them a direct cause of action against a retailer for excessive tax collections. Id.

For the foregoing reasons, we conclude that the trial court erred in finding that OCGA § 48-2-35.1 (d) authorized the appellees to bring a direct action for a refund of purportedly over-collected sales taxes against Georgia Power.

2. *While OCGA § 48-8-72, which was enacted pursuant to a uniform act, contemplates a possible cause of action against dealers, it does not create a cause of action.*

As an alternative basis for their action, the appellees rely, in addition to OCGA § 48-2-35.1 (d), on OCGA § 48-8-72. But OCGA § 48-8-72 (a) contemplates a cause

9

of action against dealers, it does not create a cause of action. OCGA § 48-8-72 (a) provides that a cause of action against a seller for over-collected sales or use taxes does not accrue until a purchaser has provided written notice to the seller and the seller has had 60 days to respond, and ity provides that the notice to the seller must contain the information necessary to determine the validity of the request.

Section 48-8-72 was enacted pursuant to the Uniform Sales and Use Tax Administration Act, OCGA § 48-8-160, et seq. First enacted in 2004, the Act authorized the revenue department to enter into the Streamlined Sales and Use Tax Agreement with other states. OCGA § 48-8-162. The purpose of the Agreement is to provide a simplified system for the administration of sales and use taxes under the law of each member state. OCGA § 48-8-164. Consistent with the Agreement, in 2010 the General Assembly enacted various amendments to the state's sales and use tax provisions "for streamlined sales tax purposes." 2010 Ga. Laws 662. One of the statutes then enacted was OCGA § 48-8-72, see 2010 Ga. Laws 662, 713 § 18, which provides in subsection (a) that "[a] cause of action against a seller for over-collected sales or use taxes does not accrue until a purchaser has provided written notice to the seller and the seller has had 60 days to respond. Such notice to the seller must contain the information necessary to determine the validity of the request."

10

The language used in this code section incorporates provisions of the Agreement which, as two leading commentators have explained, does not require member states to have refund procedures, but does impose certain requirements on states that elect to have such procedures.

> [The Agreement] is generally silent on tax refund procedures, but it does require member states whose laws allow consumers to seek tax refunds from sellers to adopt two seller-protection provisions. First, a purchaser's cause of action shall not accrue until a purchaser has provided written notice to a seller and the seller has had sixty days in which to respond. Second, . . . sellers are presumed to have a reasonable tax collection business practice, provided that they have remitted all taxes collected. . . . Walter Hellerstein and John A. Swain, Streamlined Sales and Use Tax, P7.09 (2007/2008 ed.).

(Emphasis and punctuation omitted.) *Kawa v. Wakefern Food Corp. Shoprite Supermarkets*, 24 N. J. Tax 39, 57 (IV) (N.J. Tax, 2008), affirmed 24 N. J. Tax 444 (N. J. Super., 2009).

Thus, it appears that since Georgia allows consumers to initially seek a refund of overpaid sales taxes from sellers, the Agreement required the state to adopt the seller-protection provisions set forth in OCGA § 48-8-72 (a). The question then becomes whether, in complying with the requirement that those provisions be adopted, the legislative intent of enacting OCGA § 48-8-72 was to create a new cause of action against sellers. We conclude that it was not.

11

First, OCGA § 48-8-165 (b), which is part of the initial enactment whereby the state entered into the Agreement, provides that "*no person shall have any cause of action . . . by virtue of this state's approval of the agreement.*" (Emphasis supplied.) Moreover, the plain language of the statute does not, in and of itself, expressly create a cause of action. Rather, the first sentence of the statute, written in the negative, contemplates that there may be some other independent basis for a cause of action against sellers for over-collected sales taxes, which then accrues only upon the occurrence of the two seller-protection provisions. But, we are unaware of, and the appellees have not cited, any affirmative basis for a direct cause of action against a seller for refund of allegedly over-collected sales taxes. On the contrary, as discussed above, OCGA §§ 48-2-35 and 48-2-35.1 set forth an administrative remedy by authorizing taxpayers to file a claim for a refund from the department of revenue. Under these circumstances, we conclude that OCGA § 48-8-72 was intended only to adopt the seller-protection provisions required by the Agreement and did not create a new cause of action against sellers.

This conclusion is consistent with the judgments reached by tax and appellate courts in New Jersey considering statutory language taken from the Agreement and virtually identical to that contained in OCGA § 48-8-72 (a). See *Kawa*, supra at 55

12

(IV), affirmed 24 N. J. Tax 444 (N. J. Super., 2009). The courts there concluded that the language did not create a common law or statutory cause of action and instead was intended only to add a notice provision. Id. at 58 (IV).

3. *Any claim on appeal under OCGA § 46-2-90 has been waived.*

Lastly, we note that the appellees, in their appellate brief, have also claimed that OCGA § 46-2-90, which addresses the liability of companies subject to the jurisdiction of the public service commission, allows their action against Georgia Power. However, they did not set forth that statute or make any such claim in their complaint, and at the hearing on the motion to dismiss, counsel for appellees expressly told the trial court that "[w]e're not really proceeding under [OCGA §] 46-2-90." Accordingly, that issue has been waived for purposes of this appeal. We express no opinion as to whether the appellees' complaint may be amended to assert a claim founded on OCGA § 46-2-90 or as to the merits of such a claim.

Given our rulings above, because the appellees do not have a direct cause of action against Georgia Power for a refund of allegedly erroneous collection of sales taxes, the trial court erred in denying the motion to dismiss as to counts one and two of the complaint seeking such refunds.

4. *Rate-making authority of the public service commission.*

13

Contrary to Georgia Power's arguments, the appellees' complaint does not impermissibly intrude upon the public service commission's exclusive rate-making authority. See *Carr v. Southern Co.*, 263 Ga. 771 (438 SE2d 357) (1994) (commission has exclusive power to determine utility rates and establishment of such a rate is legislative in character and binds all parties). Given our rulings above, only count three of the complaint, alleging improper calculation of the municipal franchise fee, remains pending. Thus, there is no challenge to the validity or reasonableness of any utility rate set by the commission, and instead there is simply a challenge to the method of calculating and collecting the said fee. As the trial court correctly found, the parties agree that the commission has exclusive authority to set just and reasonable rates and the complaint "rais[es] a wholly different issue."

5. *Remaining issues.*

Because of our rulings above, we need not address the appellants' remaining arguments.

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. McMillian, J., concurs fully in Divisions 1, 2, and 5, and concurs in the judgment only as to Divisions 3 and 4.*

14