303 Ga. 820
FINAL COPY

S17G0706. GEORGIA POWER COMPANY v. CAZIER et al.

BLACKWELL, Justice.

Amy Cazier and four other consumers of retail electrical service brought this putative class action against Georgia Power Company, asserting that Georgia Power for several years has collected municipal franchise fees from customers in amounts exceeding those approved by the Public Service Commission, and seeking to recover the excess fees for themselves and a class of Georgia Power customers. In Cazier v. Ga. Power Co., 339 Ga. App. 506 (793 SE2d 668) (2016), the Court of Appeals held that the plaintiffs were not required to exhaust administrative remedies before bringing their putative class action. We issued a writ of certiorari to review the decision of the Court of Appeals, and we now affirm.

1. The Public Service Commission has authorized Georgia Power to collect municipal franchise fees from its customers. The amount of the municipal franchise fee varies from customer to customer, and according to the

plaintiffs, the applicable orders of the Commission provide that the amount of the fee is to be based upon the "usage revenue" collected from a customer. As the plaintiffs see it, the Commission has directed that the municipal franchise fee chargeable to any particular customer be derived from his actual consumption of electrical service. The plaintiffs allege, however, that Georgia Power has calculated municipal franchise fees differently, basing the fees not only upon "usage revenue," but also upon other fees and charges that are not, they say, properly characterized as "usage revenue." This has resulted, the plaintiffs contend, in Georgia Power illegally collecting municipal franchise fees in excess of the amounts authorized by the Commission. For themselves and the putative class of Georgia Power customers, the plaintiffs assert claims for conversion, money had and received, unjust enrichment, and damages under OCGA § 46-2-90.[1] Georgia Power denies that it has calculated municipal franchise fees other

---

[1] Section 46-2-90 provides:

> If any company under the jurisdiction of the [C]ommission does, causes to be done, or permits to be done any act which is prohibited, forbidden, or declared to be unlawful, or fails to do any act which is required either by a law of this state or by an order of the [C]ommission, such company shall be liable to the persons affected thereby for all loss, damage, or injury caused thereby or resulting therefrom. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any such person. . . .

than as required by the Commission, and Georgia Power asserts that the plaintiffs seek in this lawsuit to rewrite the applicable orders of the Commission.

Following discovery, the plaintiffs moved for certification of a class, and Georgia Power moved for summary judgment upon several grounds, including that the plaintiffs had failed to exhaust their administrative remedies. Upon hearing these motions, the trial court dismissed the lawsuit. The trial court explained that some of the applicable orders of the Commission speak of the municipal franchise fee in terms of "usage revenue," other applicable orders refer to "total revenue," still other applicable orders speak of "revenue," the Commission has defined none of these terms in this context, and to decide the merits of the putative class action, the court would have to resolve the ambiguities in the various orders of the Commission. Resolving those ambiguities would require, the court continued, "normative judgments about what it is that the terminology should mean given the [Commission]'s mandate." The court then concluded:

> But the body that determines the [Commission]'s mandate is the [Commission] and not this court. There is a mechanism in place for obtaining the [Commission]'s determination in evaluation of what its orders and rules mean. . . . This court is not authorized to substitute its judgment for that of the [Commission] as to what [the

Commission] meant in its various orders establishing the methodology for collecting the municipal franchise fee.

Because the plaintiffs had failed to have the Commission resolve the ambiguities in its own orders, the trial court found, the plaintiffs failed to exhaust their administrative remedies, and the trial court was, therefore, without jurisdiction of the subject matter.

The plaintiffs appealed, and in Cazier, the Court of Appeals vacated the dismissal of the putative class action.[2] As to whether the plaintiffs were required to exhaust administrative remedies, the Court of Appeals looked principally to the Administrative Procedure Act (APA), OCGA § 50-13-1 et seq., which requires exhaustion when one aggrieved by an administrative decision seeks judicial review of that decision under the APA. See 339 Ga. App. at 508 (1). The Court of Appeals then reasoned that the putative class action did not seek judicial review under the APA, and the plaintiffs did not seek to challenge the applicable orders of the Commission:

> Here, in contrast, petitioners do not claim to be aggrieved by any action of the [Commission], nor do they object to any decision or order of the [C]ommission. Instead, they contend that Georgia

---

[2] This was the second appearance of this case in the Court of Appeals. See Ga. Power Co. v. Cazier, 321 Ga. App. 576 (740 SE2d 458) (2013).

4

Power has violated the relevant orders of the [Commission] by failing to use the basis prescribed by the [C]ommission to calculate municipal franchise fees. . . . [T]here is no challenge to the validity or reasonableness of any utility rate set by the [C]ommission, and instead there is simply a challenge to the method of calculating and collecting the said fee.

Id. (citations and punctuation omitted). The Court of Appeals also looked to OCGA § 46-2-90, the basis for the statutory cause of action asserted by the plaintiffs against Georgia Power, and noted that this statute "does not contemplate any administrative proceedings before the [Commission] . . . but rather authorizes an action to recover damages 'in any court of competent jurisdiction' . . . ." Id. at 509 (1). From its examination of the APA and OCGA § 46-2-90, the Court of Appeals determined that the plaintiffs were not required to exhaust administrative remedies. See id. About the concern of the trial court that deciding the case would require the resolution of ambiguities in orders of the Commission, the Court of Appeals held that the trial court was perfectly competent to resolve those ambiguities. See id. at 509-510 (2). Although our analysis differs in some respects from that of the Court of Appeals, we affirm the judgment below.

2. As a general rule, one aggrieved by an administrative decision must

exhaust his administrative remedies before pursuing a judicial remedy. As the Court of Appeals correctly noted, the APA governs judicial review of orders of the Commission, see Ga. Power Co. v. Campaign for a Prosperous Ga., 255 Ga. 253, 255 (1) (336 SE2d 790) (1985), and it requires exhaustion of administrative remedies as a condition precedent to judicial review of an administrative decision under the APA. See Ga. Dept. of Community Health v. Ga. Society of Ambulatory Surgery Centers, 290 Ga. 628, 629 (724 SE2d 386) (2012) ("Under the APA, a person cannot seek judicial review of an agency action unless he has exhausted all administrative remedies available within the agency." (citation and punctuation omitted)). The APA, however, is not the only source of the exhaustion doctrine. To the contrary, that doctrine predates the APA,[3] see, e.g., City Council of Augusta v. Loftis, 156 Ga. 77, 83 (1) (118 SE 666) (1923), and it sometimes applies in cases to which the APA does not. See, e.g., City of Suwanee v. Settles Bridge Farm, LLC, 292 Ga. 434, 437 (738 SE2d 597) (2013). Indeed, exhaustion is the usual rule whenever one aggrieved by an administrative decision seeks judicial relief of any sort from that decision, whether under the APA or in the form of an equitable remedy, see, e.g., Otwell

---

[3] The APA was enacted in 1964. See Ga. L. 1964, p. 338.

v. West, 220 Ga. 95, 98 (1) (b) (137 SE2d 291) (1964), an extraordinary remedy, see, e.g., O'Callahan v. Aikens, 218 Ga. 46, 46 (3) (126 SE2d 212) (1962), or a declaratory judgment, see, e.g., Shelley v. Town of Tyrone, 302 Ga. 297, 303 (2) (806 SE2d 535) (2017).[4] And even when there is no administrative decision from which judicial relief is sought, the exhaustion doctrine applies as well when the merits of a lawsuit are committed to the *exclusive* jurisdiction of an administrative agency. See, e.g., First Union Nat. Bank of Ga. v. Independent Ins. Agents of Ga., 197 Ga. App. 227, 228 (1) (398 SE2d 254) (1990).

Here, however, the plaintiffs do not seek judicial relief of any kind from the orders of the Commission. They do not dispute that the Commission may authorize the collection of municipal franchise fees, nor do they dispute the propriety or reasonableness of the particular methodology that the Commission has approved for the calculation of municipal franchise fees at issue in this case. Rather, the plaintiffs simply seek to recover damages for the collection of fees

---

[4] We have recognized various exceptions to the usual requirement of exhaustion, but none of those exceptions warrants discussion here. See, e.g., Women's Surgical Center, LLC v. Berry, 302 Ga. 349, 351 (1) (806 SE2d 606) (2017) (exhaustion not required for facial constitutional challenges); Ga. Society of Ambulatory Surgery Centers, 290 Ga. at 629 (1) (exhaustion not required "where resorting to the remedy would be futile" (citations and punctuation omitted)).

7

allegedly in excess of the amounts authorized by the orders of the Commission. To be sure, the plaintiffs and Georgia Power disagree about what the applicable orders require. That does not mean, however, that anyone is challenging the orders. If Georgia Power is right about what the orders require, then Georgia Power will win this case on the merits. But the case cannot properly be characterized as one in which the plaintiffs seek judicial relief *from* the orders of the Commission.

Nor is this case one in which the merits are committed by law to the exclusive jurisdiction of the Commission. The Commission has "exclusive power to determine what are just and reasonable rates and charges to be made by any person, firm, or corporation subject to its jurisdiction." OCGA § 46-2-23 (a). See also Ga. Const. of 1983, Art. IV, Sec. I, Par. I (b) (the Commission "shall be vested with such jurisdiction, powers, and duties as provided by law"). The rate-making power of the Commission is legislative in nature, Ga. Power Co. v. Allied Chem. Corp., 233 Ga. 558, 558-559 (1) (212 SE2d 628) (1975), and as we have said before, "there will be no general regulation of rates by lawsuit." Campaign for a Prosperous Ga., 255 Ga. at 258 (2). Even so, the Commission already exercised its exclusive jurisdiction to set just and

8

reasonable rates when it entered the orders authorizing Georgia Power to collect municipal franchise fees, and the plaintiffs do not dispute or seek relief from those orders. We fail to understand how a proper resolution of this putative class action would infringe upon the exclusive jurisdiction of the Commission to make just and reasonable rates for electrical service. Georgia Power points to no statute that squarely requires a plaintiff to exhaust administrative remedies before bringing a lawsuit like this one, and we find no principle of Georgia law that demands exhaustion here. See Hunnicutt v. Ga. Power Co., 168 Ga. App. 525, 526 (1) (309 SE2d 862) (1983) (decisions that hold it necessary to exhaust administrative remedies "are based upon statutes which by *express terms or necessary implication* give to the administrative board *exclusive jurisdiction* or which make the exhaustion of administrative remedies a *condition precedent* to judicial action" (citation and punctuation omitted; emphasis in original)).

3. That said, there is no question that the merits of this lawsuit implicate the rate structure that the Commission has approved. After all, as Georgia Power argues and the trial court hinted, if the trial court were to *misconstrue* the applicable orders of the Commission, its resolution of the lawsuit then would be inconsistent with the policy determinations made by and committed by law to

9

the exclusive jurisdiction of the Commission. Fortunately, as the plaintiffs note in their briefs, the law provides a mechanism by which the trial court can take care that its resolution of the case does not undercut the rate structure approved by the Commission.

The trial court may permit the Commission to construe its own orders under the doctrine of "primary jurisdiction." Unlike the exhaustion doctrine, the doctrine of primary jurisdiction is a prudential, see <u>Allco Renewable Energy Ltd. v. Mass. Elec. Co.</u>, 875 F3d 64, 74 (III) (1st Cir. 2017), and discretionary doctrine, see <u>Tassy v. Brunswick Hosp. Center</u>, 296 F3d 65, 72 (2d Cir. 2002), and it does not require the outright dismissal of a lawsuit. The United States Supreme Court has explained the distinction between these related but separate doctrines:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative

body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pacific R. Co., 352 U. S. 59, 63-64 (I) (77 SCt 161, 1 LE2d 126) (1956). See also In re StarNet, Inc., 355 F3d 634, 639 (7th Cir. 2004) ("The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." (citation and punctuation omitted)); Smith v. GTE Corp., 236 F3d 1292, 1298 (I) n.3 (11th Cir. 2001) ("Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency."); Boyes v. Shell Oil Products Co., 199 F3d 1260, 1265 (III) (A) (11th Cir. 2000) (the doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling" (citation and punctuation omitted)).[5]

---

[5] We note that, although the doctrine of primary jurisdiction developed principally in the federal courts, it has been recognized by the courts of last resort in a number of our sister states. See, e.g., Fraternal Order of Police, Strawberry Lodge #40 v. Entrekin, 314 So2d 663, 671-672 (I) (Ala. 1975); Greater Anchorage Area Borough v. City of Anchorage, 504 P2d

11

Where, as here, an agency order is at issue in a judicially cognizable

dispute, the trial court properly may refer especially difficult or technical issues

1027, 1032-1033 (Alaska 1972), overruled on other grounds by City and Borough of Juneau v. Thibodeau, 595 P2d 626 (Alaska 1979); Austin v. Centerpoint Energy Arkla, 226 SW3d 814, 823-824 (Ark. 2006); Farmers Ins. Exchange v. Superior Court of Los Angeles County, 826 P2d 730, 735-739 (III) (Cal. 1992); Trans Shuttle, Inc. v. Pub. Utilities Comm., 89 P3d 398, 404-405 (III) (A) (Colo. 2004); Eastern Shore Natural Gas Co. v. Stauffer Chem. Co., 298 A2d 322, 325 (II) (Del. 1972); Flo-Sun, Inc. v. Kirk, 783 So2d 1029, 1036-1041 (2) (B) (Fla. 2001); Briggs v. Golden Valley Land & Cattle Co., 546 P2d 382, 390, n.6 (Idaho 1976); People v. N L Indus., 604 NE2d 349, 354-355 (Ill. 1992); Austin Lakes Joint Venture v. Avon Utilities, Inc., 648 NE2d 641, 645 (I) (B), 646-648 (II) (B)-(C) (Ind. 1995); Rowen v. Le Mars Mut. Ins. Co. of Iowa, 230 NW2d 905, 909 (I) (Iowa 1975); Daily Advertiser v. Trans-La., 612 So2d 7, 31-32 (IX) (La. 1993); State ex rel. Brennan v. R. D. Realty Corp., 349 A2d 201, 206-207 (Me. 1975); Clinton v. Bd. of Ed. of Howard County, 556 A2d 273, 279-280 (III) (Md. 1989); Columbia Chiropractic Group v. Trust Ins. Co., 712 NE2d 93, 95 (1) (Mass. 1999); Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co., 559 NW2d 647, 652-653 (II) (A) (Mich. 1997); Siewert v. Northern States Power Co., 793 NW2d 272, 283-286 (II) (Minn. 2011); Lamar v. Ford Motor Co., 409 SW2d 100, 106-107 (Mo. 1966); Spear T Ranch, Inc. v. Knaub, 691 NW2d 116, 137-138 (IV) (3) (Neb. 2005); Nevada Power Co. v. Eighth Judicial Dist. Ct. of Nev. ex rel. Clark County, 102 P3d 578, 587-588 (Nev. 2004); Frost v. Commr., N.H. Banking Dept., 42 A3d 738, 743-744 (I) (N.H. 2012); Boss v. Rockland Elec. Co., 468 A2d 1055, 1059-1060 (N.J. 1983); State ex rel. ENMU Regents v. Baca, 189 P3d 663, 667, n.1 (N.M. 2008); Capital Tel. Co. v. Pattersonville Tel. Co., 436 NE2d 461, 466 (III) (N.Y. 1982); State ex rel. Banc One Corp. v. Walker, 712 NE2d 742, 744-745 (Ohio 1999); Fent v. Okla. Natural Gas Co., 898 P2d 126, 134 & n.26 (Okla. 1994); Boise Cascade Corp. v. Bd. of Forestry, 935 P2d 411, 416-417 (I) (Or. 1997); White v. Conestoga Title Ins. Co., 53 A3d 720, 728, n.14 (Pa. 2012); Dan Nelson, Automotive, Inc. v. Viken, 706 NW2d 239, 242-243 (S.D. 2005); Freels v. Northrup, 678 SW2d 55, 57-58 (Tenn. 1984); Forest Oil Corp. v. El Rucio Land & Cattle Co., 518 SW3d 422, 429-430 (II) (B) (Tex. 2017); C.V. Landfill, Inc. v. Environmental Bd., 610 A2d 145, 146-147 (I) (Vt. 1992); The Country Vintner, Inc. v. Louis Latour, Inc., 634 SE2d 745, 750 (II) (B) (Va. 2006); In re Real Estate Brokerage Antitrust Litigation, 622 P2d 1185, 1188-1189 (Wash. 1980); State ex rel. Bell Atlantic-W. Va., Inc. v. Ranson, 497 SE2d 755, 763-764 (II) (W. Va. 1997); City of Brookfield v. Milwaukee Metropolitan Sewerage Dist., 491 NW2d 484, 491-492 (II) (Wis. 1992); Glover v. State, 860 P2d 1169, 1173 (Wyo. 1993). And although this Court has never previously recognized the doctrine, our Court of Appeals has. See Delta Traffic Svc., Inc. v. Snider, 197 Ga. App. 377, 378 (398 SE2d 430) (1990).

within the specialized competence of an administrative agency to the agency itself. This is not to say, however, that every case implicating agency orders must be referred to an agency. As the United States Supreme Court has explained, "where the question is simply one of construction the courts may pass on it as an issue 'solely of law.'" Western Pacific, 352 U. S. at 65-66 (I). See State Farm Fire & Cas. Co. v. Southern Bell Tel. & Tel. Co., 245 Ga. 5, 6-7 (262 SE2d 895) (1980) (construing a utility tariff). But where the disputed words "are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that the [i]nquiry is essentially one of fact and of discretion in technical matters," a referral to the agency may be warranted. Western Pacific, 352 U. S. at 65-66 (I) (punctuation omitted). Here, the trial court determined that the terms "usage revenue," "total revenue," and "revenue" in the applicable Commission orders are ambiguous. On remand, the trial court should consider whether resolution of these ambiguities will require construction of terms used in a peculiar or technical sense, a construction that is within the special competence of the Commission. If so, the trial court would have authority under the doctrine of primary

jurisdiction to refer the construction of the orders to the Commission,[6] and if it should make such a referral, it should stay the proceedings in this case until the Commission has had an opportunity to weigh in on the issue.[7] See Boyes, 199 F3d at 1265. The doctrine of primary jurisdiction is, we think, adequate to meet any concerns in this case about judicial construction of the Commission orders in question, and the need to resolve ambiguities in those orders is no cause for

---

[6] The plaintiffs contend that the Commission already had an opportunity to weigh in on the issue when it filed an amicus brief, at the request of this Court, in connection with Georgia Power's petition for a writ of certiorari. But that brief only addressed whether this Court ought to review the decision of the Court of Appeals. No court has asked the Commission specifically for its views about the proper construction of its orders on the calculation of municipal franchise fees. We express no opinion about whether this case is one in which the trial court *ought* to refer that question to the Commission. We simply hold that the trial court should consider referral on remand.

[7] We note that the form of a referral under the doctrine of primary jurisdiction may vary from case to case, depending on the nature of the issue to be referred and the procedures of the agency to which it is to be referred. As the Indiana Supreme Court has explained:

> [In some cases,] what is required is for the plaintiff to take the issue formally before the appropriate agency. A second approach to referral has the trial court certify a question to the appropriate agency. A third approach has the trial court request an amicus brief from the appropriate agency.

Austin Lakes, 648 NE2d at 648 (citations omitted). See also Allco Renewable Energy, 875 F3d at 74 (III) (noting that, in some cases, "requesting an amicus brief from [the] agency may represent a more efficient and expeditious alternative" (citation and punctuation omitted)). We note in this case, in its amicus brief in connection with the petition for a writ of certiorari, see note 6 supra, the Commission represented that it could construe its relevant rate orders pursuant to its rules and regulations governing declaratory rulings. See Ga. Comp. R. & Regs. r. 515-2-1-.12.

We express no opinion about the extent to which, when an issue is referred to an agency under the doctrine of primary jurisdiction, the agency's resolution of the issue is binding on the trial court.

application of the exhaustion doctrine. The judgment of the Court of Appeals is affirmed.[8]

Judgment affirmed. Hines, C. J., Benham, Hunstein, Nahmias, Peterson, JJ., and Judge Trenton Brown III concur. Melton, P. J., and Grant, J., concur in judgment only as to Division 3. Boggs, J., disqualified.

---

[8] When we issued the writ of certiorari, we also invited the parties to brief whether OCGA § 46-2-90 affords a remedy to the plaintiffs for charges that are allegedly in excess of those authorized by the Commission. Nearly 90 years ago, this Court held in Atlantic Log & Export Co. v. Central of Ga. R. Co., 171 Ga. 175 (155 SE 525) (1930), that an earlier version of the statute afforded no remedy against a railroad for freight charges in excess of those authorized by the Commission, but we have not decided whether Atlantic Log would apply in the same way today to alleged overcharges by an electrical service provider, considering changes in the background regulatory law since Atlantic Log. We extended an invitation to brief these questions in this case in light of the significance that the Court of Appeals attached to OCGA § 46-2-90 in its consideration of the exhaustion question. Our holding that exhaustion is not required in this case, however, is not driven by OCGA § 46-2-90, and neither the trial court nor the Court of Appeals has made any ruling about whether the plaintiffs properly have stated a claim under OCGA § 46-2-90. Moreover, even if the plaintiffs failed to state a claim under the statute, they have asserted other claims against Georgia Power — for conversion, money had and received, and unjust enrichment — that would remain unaffected by a determination that OCGA § 46-2-90 affords no remedy in a case like this one. Accordingly, the resolution of the case now before us does not require the resolution of any questions about the meaning of OCGA § 46-2-90. We, therefore, decline to express any opinion about whether the statute has application in these circumstances. See Pearce v. Tucker, 299 Ga. 224, 226-227 (787 SE2d 749) (2016).

15

Decided June 18, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 506.

Troutman Sanders, William M. Droze, Robert P. Edwards, Jr., Lindsey B. Mann, Roger S. Reigner, Jr., for appellant.

Barnes Law Group, Roy E. Barnes, John F. Salter, Jr.; Talley, Richardson & Cable, J. Glenn Richardson, for appellees.

Christopher M. Carr, Attorney General, Isaac Byrd, Deputy Attorney General, Daniel S. Walsh, Senior Assistant Attorney General, Andrew A. Pinson, Assistant Attorney General, Sarah Hawkins Warren, Solicitor-General, Victoria C. Powell, Assistant Solicitor-General; Rusi C. Patel, Susan J. Moore, amici curiae.