**FOUTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 1, 2021**

# In the Court of Appeals of Georgia

A21A1346, A21A1347. CAZIER et al. v. GEORGIA POWER
    COMPANY; and vice versa.

RICKMAN, Chief Judge.

This is the third appearance of this matter before this Court. In 2011, plaintiff Amy Cazier and others filed a putative class action against Georgia Power Company for its allegedly improper collection of sales tax generated by a franchise fee charged to customers of municipalities. After lengthy proceedings, including two prior appeals to this Court,[1] the Supreme Court of Georgia asked the trial court to consider a remand to the Georgia Public Service Commission (PSC) for that body's determination as to whether Georgia Power had properly charged its customers in this

---

[1] See *Georgia Power Co. v. Cazier*, 321 Ga. App. 576 (740 SE2d 458) (2013) ("*Cazier I*"); *Cazier v. Georgia Power Co.*, 339 Ga. App. 506 (793 SE2d 668) (2016) ("*Cazier II*").

respect. *Georgia Power Co v. Cazier*, 303 Ga. 820, 826 (2) (815 SE2d 922) (2018) ("*Cazier III*"). After the trial court sent the case to the PSC, the regulatory agency determined that the relevant terms "usage revenue" and "total revenue" had the same meaning and that Georgia Power had properly implemented its schedule to recover its municipal franchise fee ("MFF"). The trial court then adopted the PSC's determination, certified the class, and granted summary judgment to Georgia Power. In Case No. A21A1346, plaintiffs argue the trial court erred when it granted summary judgment to Georgia Power. In the cross-appeal, Case No. A21A1347, Georgia Power argues that the class should not have been certified. We affirm in the first appeal and dismiss the second as moot.

The relevant facts are not in dispute. In 2007, the PSC revised its fee schedule guidelines for, among other rates, an MFF cost recovery charge, mandating different charges for customers within and without municipal boundaries. Because the MFF covers some of Georgia Power's expenses incurred by purchasing access and right-of-way easements from municipalities, the PSC found that municipal customers should bear a greater percentage of the cost recovery charge. Specifically, the PSC's January 2007 order provided that through a process of gradual implementation to be completed by 2009, Georgia Power would collect 2 percent of its "*usage revenue*

2

entirely by inclusion of [MFF] amounts in its rate base," as well as "that portion of franchise [fees] representing 2 percent of *usage revenue* exclusively from its customers located within the municipality to which such franchise fees are paid." (Emphasis supplied.)

On December 31, 2007, the PSC issued a second order finding that Georgia Power's proposed rates detailed in the January 2007 order were "fair, just and reasonable." One of the rates proposed by Georgia Power included a MFF "calculated on *total revenues* and charged to each customer on the basis of the customer's contribution to total revenues" at the PSC-approved rate. (Emphasis supplied.) After revisions to other tariffs required new compliance filings, Georgia Power filed a revised fee schedule, including a MFF charge, collected by applying the "rates to the *total revenues* of each bill." (Emphasis supplied.) In March 2008, the PSC issued a third order concluding that Georgia Power's proposed tariff schedule was "designed to collect the proper level of revenue and properly allocate the collection of revenue in compliance with" the December 2007 order. Georgia Power submitted compliance filings to the PSC again in 2010 and 2013, and while rate percentages changed slightly in both cases, the relevant language concerning MFF calculation based on "total revenues" remained the same.

Plaintiffs are Georgia Power customers whose monthly bills featured an itemized list of charges, including a nuclear construction cost recovery fee ("NCCRF") and the MFF. In their original suit, filed in 2011, plaintiffs alleged that Georgia Power improperly collected sales taxes on top of those fees, and that Georgia Power improperly calculated the MFF by including cost recovery items like the NCCRF as well as an environmental compliance cost recovery fee ("ECCR") in the revenue sum to which the MFF percentage was applied. See *Cazier I*, 321 Ga. App. at 577. Georgia Power moved to dismiss, claiming in part that the consumers' only remedy was set forth in OCGA § 48-2-35, which prescribes the procedure by which a taxpayer can claim a refund of taxes improperly collected. The trial court denied the motion but authorized an interlocutory appeal. Id.

In our first opinion on the matter, we concluded that OCGA § 48-2-35 did not authorize a cause of action for refund directly from the dealer, and that the trial court erred both when it authorized a direct claim against Georgia Power for improper collection of sales taxes and when it denied Georgia Power's motion to dismiss plaintiffs' first two claims. *Cazier I*, 321 Ga. App. at 581. We also concluded, however, that plaintiffs' third claim (that Georgia Power improperly calculated the MFF) did not infringe on the PSC's exclusive authority to establish utility rates, and

4

we therefore affirmed the trial court's denial of Georgia Power's motion to dismiss this count. Id. at 583.

On remand from our ruling in *Cazier I*, plaintiffs amended their complaint to add a claim for improper MFF calculation under OCGA § 46-2-90, which authorizes claims against entities subject to PSC jurisdiction. See *Cazier II*, 339 Ga. App. at 507. After Georgia Power moved for summary judgment, the trial court accepted Georgia Power's contention that plaintiffs had failed to exhaust their administrative remedies, denied class certification, and dismissed the entire action. Id.

In *Cazier II*, we held that under Georgia's Administrative Procedure Act ("APA"), plaintiffs were required to exhaust their administrative remedies before bringing suit only if they were "'aggrieved by a final decision in a contested case'" or had an "'objection to any order or decision' of the relevant agency." *Cazier II*, 339 Ga. App. at 508 (1). Because plaintiffs did not claim to be aggrieved by or object to any action or order by the PSC, we concluded, the exhaustion doctrine did not preclude their claim against Georgia Power for its alleged improper calculation of the MFF, and we therefore vacated the trial court's ruling and remanded for further proceedings. Id. at 510 (2).

5

The Supreme Court of Georgia granted certiorari and, in *Cazier III*, affirmed our conclusion that plaintiffs were not precluded from bringing suit against Georgia Power because the merits of the claim were not within the PSC's exclusive jurisdiction. *Cazier III*, 303 Ga. at 823-824 (2). The Court noted, however, that the regulatory agency's exclusive rate making power might be infringed if the trial court were to "misconstrue" the PSC's orders in the case. Id. at 824 (3). The Court thus remanded the case to the trial court using the doctrine of "primary jurisdiction," under which a trial court may, in its discretion, consult an administrative body for its opinion on any issue within that body's special competence. Id. at 825 (3). The Court encouraged the trial court to consider whether the revenue terms it deemed ambiguous should be referred to the PSC for technical clarification or simply interpreted by the court itself as a question of law. Id. at 827 (3).

On remand from *Cazier III*, the trial court applied the doctrine of primary jurisdiction and sought a determination from the PSC as to the meaning of the ratemaking terms "revenue," "usage revenue," and "total revenue." The trial court also conditionally certified the class but noted that, as then defined, it included every member of the Fulton County trial court.

6

After hearing argument, the PSC issued a written determination that Georgia Power had properly calculated the MFF when it applied the charge as a percentage of total revenue from each customer's bill. Noting that Georgia Power's rates are approved by the PSC to recover all "usage" from customers, the PSC found that it would be unreasonable to exclude cost recovery items from the MFF calculation, especially when considering the minimum monthly bill, which included the NCCRF and other similar charges, even if a customer had no kilowatt-hour usage for that month. The PSC observed that nuclear construction costs and environmental compliance costs had previously been included in Georgia Power's total consumption rate charge but had become itemized for consumer clarity in 2007, and noted that it had approved Georgia Power's compliance filings, which had applied the MFF to the total revenue from each bill (including revenue from cost recovery items) in 2007, 2010, and 2013. The PSC concluded that its orders employed "usage revenue" and "total revenue" interchangeably, such that Georgia Power properly applied the MFF by calculating the charge based on a percentage of each consumer's total charge.

On the case's return to the trial court, plaintiffs moved to certify the class with a revised definition that excluded Georgia Power customers who were also members

of the judiciary.[2] After a hearing, the trial court considered the numerosity, commonality, typicality, adequacy, predominance, and superiority prerequisites for a class action, found that the plaintiffs carried each of these burdens, and certified the class. The court then concluded that the PSC's determination that Georgia Power's collection practices were valid was not arbitrary, capricious, or clearly erroneous, and granted Georgia Power's motion for summary judgment on this basis. These cross-appeals followed.

Case No. A21A1346

1. Plaintiffs argue that the trial court erred when it (a) referred the legal question of the meaning of the terms "revenue," "total revenue," and "usage revenue" to the PSC, and (b) granted summary judgment to Georgia Power on the basis of the PSC's determination.

---

[2] The trial court defined the class as "those electric service customers of Defendant, excluding electric service customers who are also judges or justices of the Superior Courts, Court of Appeals, or Supreme Court, who, between January 1, 2008 and the time of certification, were charged Municipal Franchise Fees that were calculated pursuant to the challenged multiplication methodology, to wit: by unlawfully factoring the applicable percentage against a sum of the Environmental Compliance Cost Recovery, Nuclear Construction Cost Recovery, and Current Electrical Usage Service."

The law applicable to our review of the PSC's ratemaking power is well-established. "[T]he Public Service Commission, rather than any other agency of the executive branch, has authority to regulate public utilities." *Lasseter v. Ga. Public Service Comm'n.*, 253 Ga. 227, 230 (1) (319 SE2d 824) (1984). The PSC "was created for a special purpose with special competence to deal with special matters including the establishment of rates for public utilities." *Ga. Public Service Comm'n. v. Gen. Telephone Co. of Southeast*, 227 Ga. 727, 729 (182 SE2d 793) (1971). "The commission shall have exclusive power to determine what are just and reasonable rates and charges to be made by any . . . corporation subject to its jurisdiction." OCGA § 46-2-23 (a). "[P]rescribing rates for future application is an exercise of quasi-legislative functions by an administrative body." (Citations omitted.) *Ga. Power Co. v. Ga. Public Service Comm'n*, 196 Ga. App. 572, 577 (3) (396 SE2d 562) (1990).

Plaintiffs would have us construe the parties' disputed terms ourselves, and criticize the trial court for abdicating this legal function. It is true that, as our Supreme Court has explained, "it usually is for the courts to resolve [an] ambiguity by ascertaining the most natural and reasonable understanding" of a statute or regulation. *Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527)

9

(2015) (emphasis omitted). "But when it appears that the General Assembly has committed the resolution of such an ambiguity to the discretion and expertise of an agency of the Executive Branch that is charged with the administration of the statute, the usual rule may not apply." Id. In these exceptional cases, "the courts must defer to the way in which the agency has resolved the ambiguity in question," but this deference is limited: the agency must have "resolved the ambiguity in the proper exercise of its lawful discretion" and "upon terms that are reasonable in light of the statutory text." (Citations and punctuation omitted.) Id. at 558-559 (1); see also *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008) ("While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes.").

With these principles in mind, we turn to plaintiffs' assertions that the trial court erred when it referred this matter to the PSC and when, on remand from that agency, it granted summary judgment to Georgia Power.

(a) As early as 2015, the trial court concluded that the terms "total revenue" and "usage revenue" were ambiguous such that a PSC determination as to their meaning was desirable, and nothing in this Court's or our Supreme Court's

10

subsequent decisions suggests that this conclusion was incorrect. Indeed, our Supreme Court emphasized in *Cazier III* that a trial court faced with construing and applying a decision of an administrative agency "properly may refer especially difficult or technical issues within the specialized competence of an administrative agency to the agency itself." 303 Ga. at 826 (3). Where "the disputed words are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that the inquiry is essentially one of fact and discretion in technical matters, a referral to the agency may be warranted." (Citation and punctuation omitted.) Id.

Here, the PSC's use of two different terms – "usage revenue" and "total revenue" – to describe the basis for calculating the sales tax generated on the MFF raised a question, properly referred to that agency, as to whether the two categories described by those apparently different terms were the same. See, e.g., *Pandora Franchising v. Kingdom Retail Group*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016) (when a statute uses different terms, a court presumes that the legislature intended two different meanings for the terms). The trial court thus did not abuse its discretion when it invoked the primary jurisdiction of the PSC for an initial determination as to whether these terms' difference was merely apparent rather than

11

real or substantial. See *Delta Traffic Service, Inc. v. Snider*, 197 Ga. App. 377, 378 (398 SE2d 430) (1990) (a trial court did not err in its initial deference to the Interstate Commerce Commission on the reasonableness of seeking rate undercharges and setting tariffs).

(b) The trial court also did not abuse its discretion when it accepted the PSC's determination that Georgia Power's calculation of the MFF was reasonable.

OCGA § 50-13-19, which concerns judicial review of cases involving administrative review, provides in relevant part:

> (h) [A] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) [i]n excess of the statutory authority of the agency; (3) [m]ade upon unlawful procedure; (4) [a]ffected by other error of law; (5) [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As we have noted above, the PSC found that it would be unreasonable to exclude cost recovery items from the MFF calculation, especially when considering the minimum monthly bill, which includes the NCCRF and other similar charges even if the customer has no kilowatt-hour usage. The PSC also noted that it had previously approved Georgia Power's compliance filings, which applied the MFF to the total revenue from each bill (including revenue from cost recovery items), in 2007, 2010, and 2013. Based on this history, the PSC determined that its orders employed "usage revenue" and "total revenue" interchangeably, such that Georgia Power properly applied the MFF by calculating the charge based on a percentage of each consumer's total charge.

Because the PSC's determinations were supported by substantial evidence and were neither arbitrary nor capricious, the PSC did not abuse its exclusive ratemaking authority when it made them. Likewise, the trial court did not abuse its discretion or commit an error of law when, having concluded that Georgia Power's rate was reasonable, it granted summary judgment to Georgia Power on that basis. See *Delta Traffic*, 197 Ga. App. at 378 (a trial court did not err in referring the question of a tariff's reasonableness to an administrative agency for an initial determination), cited with approval in *Cazier III*, 303 Ga. at 825 n. 5 (3); *Cook v. Glover*, 295 Ga. 495, 501

13

(761 SE2d 267) (2014) (reversing the Court of Appeals' reversal of an administrative agency's interpretation of an ambiguous statutory provision when the administrative interpretation was "reasonable and entitled to deference").

Case No. A21A1347

2. In light of our conclusion above that the trial court did not err when it granted summary judgment to Georgia Power, we accept Georgia Power's concession that the cross-appeal concerning the certification of the class is moot. See, e.g., *Faber v. Ciox Health, LLC*, 944 F.3d 593, 604-605 (6th Cir. 2019) (in the wake of a grant of judgment to a defendant, "the class certification carries no effect" and is "a nullity" such that the case "need not be remanded to issue post-judgment notice").

*Judgment affirmed in Case No. A21A1346. Case No. A21A1347 dismissed as moot. Dillard, P. J., and Mercier, J., concur.*